RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0313p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, LOCAL 71,

        *Plaintiff-Appellee,*

       *v.*

TRAFFTECH, INC.,

        *Defendant-Appellant.*

No. 05-4392

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-01213—Lesley Brooks Wells, District Judge.

Argued: July 21, 2006

Decided and Filed: August 23, 2006

Before: MARTIN and SUTTON, Circuit Judges; JORDAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Alan G. Ross, ROSS, BRITTAIN & SCHONBERG, Cleveland, Ohio, for Appellant. Frederick G. Cloppert, Jr., CLOPPERT, LATANICK, SAUTER & WASHBURN, Columbus, Ohio, for Appellee. **ON BRIEF:** Alan G. Ross, ROSS, BRITTAIN & SCHONBERG, Cleveland, Ohio, for Appellant. Frederick G. Cloppert, Jr., CLOPPERT, LATANICK, SAUTER & WASHBURN, Columbus, Ohio, for Appellee.

---

## OPINION

---

SUTTON, Circuit Judge. Trafftech entered into collective bargaining agreements with two different unions and, according to one version of events, promised each of them the same work on an exclusive basis. The International Brotherhood of Workers, Local 71 objected to sharing the work (as apparently did the other union, but its objection is not before us) and filed a grievance with the company. When the parties failed to resolve the grievance, the union sued, asking the district court to enforce an arbitration clause in the collective bargaining agreement. The district court granted summary judgment to the union, permitting it to enforce the arbitration clause.

---

[*] The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

Characterizing the dispute as a representational matter outside the jurisdiction of the federal courts, Trafftech appeals. By the express terms of the collective bargaining agreement, however, Trafftech and Local 71 committed grievances of this sort to resolution by arbitration. The fact that Trafftech may have entered into another collective bargaining agreement regarding some of the same work does not necessarily make the dispute a representational one committed exclusively to the National Labor Relations Board. Because § 301 of the Labor Management Relations Act gives the federal courts concurrent jurisdiction to enforce an arbitration clause like this one, we affirm.

I.

Trafftech is a road and highway construction contractor. Under § 8(f) of the National Labor Relations Act, a company in the building and construction industry may enter into a collective bargaining agreement with a union to provide a pool of employees for the company. 29 U.S.C. § 158(f).

Consistent with this provision, Trafftech entered into collective bargaining agreements under § 8(f) with two different unions. In 1990 (and most recently in 2001 through a renewal of the agreement), Trafftech agreed with the Laborers District Council of Ohio of the Laborers International Union of North America, Local 860 to provide its members with certain work, including "the construction of all . . . highway lighting [and] signal lighting." D. Ct. Op. at 3 n.2. Due to an insufficient supply of workers, Trafftech in 1998 (and most recently in 2001) entered into a second § 8(f) collective bargaining agreement with the International Brotherhood of Electrical Workers, Local 71. That agreement, according to Local 71, guaranteed "work within the jurisdiction of the Union" to its members. *Id.* According to the union, that guarantee covers "electrical or electrical related traffic signal and/or highway street lighting work." *Id.* at 5.

On May 12, 2003, Local 71 filed 11 grievances with Trafftech under the collective bargaining agreement and sought arbitration to resolve the dispute. With respect to each violation, Local 71 identified the grievance and the section of the collective bargaining agreement that it violated. The 11 grievances covered the waterfront of labor-management disputes, though the parties agree that most of the disputes stem in one way or another from Trafftech's practice of giving some electrical-related work on traffic signals and highway lighting to Local 860 members rather than to Local 71 members. In response, Trafftech filed a representation petition with the National Labor Relations Board, maintaining that the grievances should be interpreted as a claim by Local 71 that it is the majority representative of all of Trafftech's electrical workers, a claim that "called for an election to be conducted by the Board." Trafftech Br. at 6. Soon thereafter, Local 71 also filed a charge with the Board, arguing that Trafftech had violated §§ 8(a)(1), (2) and (5) of the National Labor Relations Act by (in the words of the Board) "refus[ing] to process grievances, . . . reassign[ing] bargaining unit work, and . . . fail[ing] to follow the exclusive hiring hall procedures as set forth in the parties' contract." JA 178.

On June 16, 2003, Local 71 filed this action, seeking to compel arbitration of its grievances under § 301(a) of the Labor Management Relations Act. On April 15, 2004, the district court, with the agreement of the parties, chose to place the case in abeyance and to defer to the Board's preferences in resolving the complaints already before it. On November 30, 2004, the Board informed the parties that it would "administratively defer[] in light of [the district court's] concurrent jurisdiction of cases involving breaches of collective bargaining agreements under [§] 301 of the Labor [M]anagement Relations Act." D. Ct. Op. at 8–9 (internal quotation marks omitted). At that point, Trafftech moved the district court to dismiss the case on the ground that the district court did not have subject matter jurisdiction to consider Local 71's complaint or in the alternative to re-defer to the Board.

The district court rejected Trafftech's motion. Because the federal-court complaint turned on alleged "violations of contracts between [an] employer[] and [a] labor organization[]," the court concluded that § 301 gave it concurrent jurisdiction over the matter and permitted it to grant the motion to compel arbitration. *Id*. at 12. "There is simply no evidence in the record," the court noted, "that [Local 71] seeks to represent the employees of [Local 860]"; to the contrary, "Local 71 is seeking an interpretation of the Agreement which may, or may not, be understood as providing the plaintiff with the contractually bargained for hiring and work assignment exclusivity it alleges." *Id*. at 14. As a result, the district court granted summary judgment for Local 71 on its § 301 claim, compelling arbitration of the grievances.

## II.

Section 301(a) of the Labor Management Relations Act empowers district courts to hear "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). As a component of that authority, a district court may "grant the union specific enforcement of an arbitration clause in a collective-bargaining agreement." *Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 420 (1976). When reviewing a claim for arbitration, "a court's role is limited to deciding if 'the party seeking arbitration is making a claim which on its face is governed by the contract.'" *Gen. Drivers, Local Union No. 984 v. Malone & Hyde*, 23 F.3d 1039, 1043 (6th Cir. 1994) (quoting *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960)).

Like the district court, we believe that this arbitration claim "is governed by the contract." Local 71 filed 11 grievances with the union. In doing so, it identified the section of the collective bargaining agreement that each grievance violated, and when the company refused to address the grievances, the union invoked its rights under Article I, §§ 5–8 of the collective bargaining agreement. Those sections say that if the parties cannot resolve grievances on their own, "the parties shall jointly request Federal Mediation & Conciliation Service to . . . . hear the grievance." D. Ct. Op. at 4. Local 71 followed the procedures required by the collective bargaining agreement to arbitrate the grievances. Trafftech refused to arbitrate, and Local 71 therefore permissibly filed this claim under § 301(a) seeking an order compelling Trafftech "to participate in the arbitration procedure of these grievances." JA 8.

In one sense, Trafftech does not disagree with any of the premises of this analysis. It concedes that the district court may compel arbitration if it has jurisdiction over the case. And it does not dispute that the traditional requirements for jurisdiction exist here, namely that the collective bargaining agreement governs these grievances and permits arbitration of them.

Trafftech resists the conclusion that normally flows from these premises on the ground that *Garmon* preemption applies, giving the Board exclusive jurisdiction over this dispute. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959). As Trafftech sees things, once a dispute implicates § 7 or § 8 of the National Labor Relations Act (concerning representational disputes), federal courts (and state courts) must defer to the Board's exclusive initial jurisdiction over the dispute. *See id.* at 244–45 (holding that "courts are not primary tribunals to adjudicate such [representational] issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board"). Because Local 71 signed a collective bargaining agreement under § 8(f) of the Act, Trafftech argues that all of the grievances necessarily arise under that provision.

Of course, unlike a traditional *Garmon* preemption claim, Local 71 did not invoke its rights under these provisions of the National Labor Relations Act in bringing this claim; it raised violations only of the collective bargaining agreement and sought relief only under § 301 of the Labor Management Relations Act. Trafftech responds that *it* has asserted a claim with the Board under § 8(f) to test Local 71's majority status, and, having done so, argues that the federal courts must

defer jurisdiction over these grievances until the Board has resolved the representational dispute. We disagree.

   *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261 (1964), involved dueling jurisdictional claims not unlike the ones presented here. Two rival unions represented different bargaining units in a Westinghouse plant. One of the unions filed grievances, contending that members of the other union's bargaining unit were performing the work of its unit's members. *Id*. at 262. Regardless of whether the dispute was over work assignment (and thus covered by the collective bargaining agreement) or over representation of particular employees (and thus subject to the Board's exclusive jurisdiction), the Court concluded that the district court could order arbitration under the auspices of enforcing the collective bargaining agreement. *Id.* at 268–69. "If this is truly a representation case," the Court noted, "either [the union] or [the employer] can move to have the [issue resolved by the Board]. But the existence of a remedy before the Board for an unfair labor practice does not bar individual employees from seeking damages for breach of a collective bargaining agreement in a state court." *Id*. at 268. In concluding that "a suit . . . in the federal courts, as provided by § 301(a) of the Labor Management Relations Act . . . is proper, even though an alternative remedy before the Board is available," *id*., the Court reasoned that the issues resolved by the two methods of dispute resolution will not overlap entirely and that arbitration may well resolve some issues that the Board's proceedings cannot. *See, e.g.*, *id*. at 269 ("[T]he Board's unit finding does not *per se* preclude the employer from adding to, or subtracting from, the employees' work assignments.") (internal quotation marks omitted). In the end, "[h]owever the dispute be considered—whether one involving work assignment or one concerning representation"—the Court saw "no barrier to use of the arbitration procedure." *Id*. at 272.

   The employer in *Carey*, it is true, had not taken the step of filing a representational matter before the Board—as Trafftech has done. But that happenstance does not make a difference: As *Carey* acknowledged, either party could apply for a remedy before the Board and the federal court action could proceed even if one of them did pursue this route of relief. *Id*. at 268. "Arbitral awards construing a seniority provision or awards concerning unfair labor practices," the Court acknowledged, "may later end up in conflict with Board rulings. Yet . . . the possibility of conflict is no barrier to resort to a tribunal other than the Board." *Id*. at 272 (citations omitted).

   Since *Carey*, this court has drawn the following dichotomy between disputes implicating the exclusive initial jurisdiction of the Board under *Garmon* and those implicating the concurrent jurisdiction of the federal courts under § 301. When a dispute is "primarily representational" under § 7 or § 8 of the National Labor Relations Act, "simply referring to the claim as a 'breach of contract' [is] insufficient for the purposes of § 301 federal courts' jurisdiction," but "matter[s] primarily of contract interpretation, whi[ch] potentially implicat[e] representational issues," remain within the federal courts' § 301 jurisdiction. *Paper Workers Int'l Union v. Air Prods. & Chems., Inc.*, 300 F.3d 667, 672, 675 (6th Cir. 2002).

   Our sister circuits have embraced a similar jurisdictional division between primarily representational and collaterally representational labor-management disputes. *See Pace v. Honolulu Disposal Serv., Inc.*, 227 F.3d 1150, 1157 (9th Cir. 2000) ("[W]e have drawn the jurisdictional line by asking whether the major issues to be decided can be characterized as primarily representational or primarily contractual.") (internal quotation marks and ellipses omitted); *Kansas City S. Transp. Co. v. Teamsters Local Union #41*, 126 F.3d 1059, 1064 (8th Cir. 1997) ("The district court's jurisdiction under § 301 is determined by examining whether the major issues to be decided can be characterized as primarily representational or primarily contractual.") (internal quotation marks omitted); *United Food & Commercial Workers Union, Local 400 v. Shoppers Food Warehouse Corp.*, 35 F.3d 958, 961 (4th Cir. 1994) ("[C]ourts generally have allowed arbitration to proceed unless a dispute is so 'primarily representational,' that it falls solely within the Board's jurisdiction."); *Trustees of Colo. Statewide Iron Workers Trust Fund v. A & P Steel, Inc.*, 812 F.2d

1518, 1526 (10th Cir. 1987) ("We find that the representational issue before us attaches to a genuine section 301 contract dispute as a collateral issue and that the case is not so primarily representational as to preclude section 301 jurisdiction.") (internal quotation marks omitted); *see also Hotel & Rest. Employees Union Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 565 (2d Cir. 1993) ("[I]t is wrong to say, as the hotel does, that the NLRB has exclusive jurisdiction over representation issues. Rather, § 301(a) grants courts concurrent jurisdiction over representation issues arising under a contract.").

Trafftech's arguments fall on the wrong side of this line. Local 71 permissibly characterized its action as a dispute arising under the collective bargaining agreement. And while Trafftech's filings with the Board raised representational issues under § 7 and § 8 of the National Labor Relations Act, they did not convert Local 71's complaint into one that is primarily representational in nature.

Nor do Trafftech's arguments implicate two types of situations in which a dispute will be treated as primarily representational: where the Board has already exercised jurisdiction over a matter and is either considering it or has already decided the matter, *see, e.g.*, *Int'l Bhd. of Elec. Workers v. Iowa Elec. Light & Power Co.*, 668 F.2d 413, 420 (8th Cir. 1982), or where the issue is an "initial decision[] in the representation area," *J.P. Morgan Hotel*, 996 F.2d at 565; *see, e.g.*, *Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc.*, 845 F.2d 1250, 1253 (4th Cir. 1988) (noting that where "the court could not possibly determine whether there has been a violation of the collective bargaining agreement without first deciding whether the union was elected as the employees' bargaining representative," the district court should not exercise jurisdiction) (internal quotation marks omitted). Neither of these situations exists here because the Board chose to defer exercising jurisdiction over the dispute and because the arbiter need not resolve the representational dispute to determine whether Trafftech has violated its collective bargaining agreement.

Trafftech persists that we said otherwise in *International Brotherhood of Boilermakers v. Olympic Plating Industries, Inc.*, 870 F.2d 1085 (6th Cir. 1989). But that case directly implicated both of these forbidden "primarily representational" areas. In *Olympic Plating*, the action filed in the district court was "an injunction against Olympic . . . to enjoin it from recognizing Local 63 . . . as the authorized representative of Olympic's unionized employees." *Id.* at 1086. We did, indeed, dismiss the case and defer to *ongoing* proceedings before the Board, but that was because the claim was "based upon the same facts and issues of law" at issue before the Board, *id.* at 1087, and ultimately was "virtually identical to the pending unfair labor practice charge before the board," *id.* at 1089. In both proceedings in that case, the clear issue was whether "the [union] is the proper bargaining representative of Olympic's employees," even though one of the parties "styled" the claim as a "breach of contract" action. *Id.*

This case presents a poor analogy to that situation. While the § 301 claim presented to us relates to 11 alleged breaches of the collective bargaining agreement, which turn on an interpretation of that contract as well as on the particular facts of each alleged violation, the representational matter before the Board merely queries whether a majority of the employees working on electrical work for traffic-signal and highway-lighting construction support Local 71. While the question before the Board is clearly representational, the issues presented to us are more akin to what the Supreme Court called "a controversy as to whether certain work should be performed by workers in one bargaining unit or those in another." *Carey*, 375 U.S. at 263. While the representational matter conceivably could resolve some of Local 71's grievances, the same is true in reverse: The arbitration might very well resolve the representational dispute, so the possibility of a comprehensive solution alone is not a reason to defer. *See id.* at 272 ("If it is a representation matter, resort to arbitration may have a pervasive, curative effect even though one union is not a party."); *see also id.* at 268.

As far as our precedents are concerned, *Paper Workers International Union v. Air Products & Chemicals, Inc.*, 300 F.3d 667 (6th Cir. 2002), presents the better analogy. The union, there, asserted grievances under the collective bargaining agreement and asked the court to enforce the arbitration clause through an action filed under § 301. The employer responded that the dispute was a representational matter implicating the exclusive jurisdiction of the National Labor Relations Board. Because the questions before us were "undeniably governed by the existing collective bargaining agreement," we concluded that "[e]ven if th[e] matter does implicate a collateral representational issue, the matter is, first and foremost, a genuine Section 301 contract dispute" that permits the federal courts to retain jurisdiction over the dispute and enforce the arbitration clause. *Id.* at 675–76.

Trafftech's preferred rule—that the federal courts should stay their jurisdictional hand whenever a party files a petition with the Board asserting that an issue implicates representational issues—either would be unmanageable or would too readily undermine Congress's creation of concurrent jurisdiction under § 301. By simply characterizing its dispute as representational, regardless of the Board's interest in the dispute and regardless of the Board's decision itself to defer jurisdiction (as here), a party to a collective bargaining agreement could avoid (or at least delay) having to answer for alleged violations of that contract in federal court. No precedent supports this end run around § 301.

Trafftech, lastly, complains that because Local 860 has filed complementary grievances that have gone to arbitration, it is possible that enforcement of the arbitration clause on behalf of Local 71 may result in contradictory federal-court rulings. This consideration seems to go to the heart of Trafftech's concerns but not of ours. *Carey*, for one, acknowledged in a similar situation that even if the arbitration did not bind both unions, it still had the potential to resolve the dispute—and that remained a benefit of permitting arbitration to proceed. *See* 375 U.S. at 272 ("If it is a representation matter, resort to arbitration may have a pervasive, curative effect even though one union is not a party."). For another, it remains highly speculative that the rulings from the two arbitration panels, if indeed both disputes go to arbitration, would be contradictory as a matter of legal enforcement as opposed merely to being financially detrimental to Trafftech. If both arbitrations favor the unions, Trafftech may have to hire workers from both unions to staff the jobs in question (*i.e.*, some workers might handle the job while others might get paid to watch), but that may well be because Trafftech committed to that very outcome as a matter of contract. Either way, the fact remains that the Board does not lose jurisdiction solely because we enforce the arbitration clause in this case. *Id.* at 271 ("There is no question that the Board is not precluded from adjudicating unfair labor practice charges even though they might have been the subject of an arbitration proceeding and award."). If for some reason Trafftech does find itself subject to irreconcilable orders, there is no reason it could not seek further remedy from the Board. But that remote possibility does not divest the federal courts of jurisdiction over this dispute.

III.

For these reasons, we affirm.