RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0228p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DiPONIO CONSTRUCTION COMPANY., INC.,
　　　　　　　　　　*Plaintiff-Appellant*,

No. 11-1034

*v.*

INTERNATIONAL UNION OF BRICKLAYERS
AND ALLIED CRAFTWORKERS, LOCAL 9,

　　　　　　　　　　*Defendant-Appellee,*

NATIONAL LABOR RELATIONS BOARD,
　　　　　　　　　　*Intervenor-Appellee*.

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-10607—Arthur J. Tarnow, District Judge.

Argued: March 1, 2012

Decided and Filed: July 24, 2012

Before: SILER, ROGERS, and WHITE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Steven A. Wright, STEVEN A. WRIGHT, P.C., Shelby Township, Michigan, for Appellant. Joel F. Dillard, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Intervenor-Appellee. **ON BRIEF:** Steven A. Wright, Sandra L. Wright, Kelly M. Kammer, STEVEN A. WRIGHT, P.C., Shelby Township, Michigan, for Appellant. Joel F. Dillard, Eric G. Moskowitz, Nancy E. Kessler Platt, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., John G. Adam, LEGGHIO & ISRAEL, P.C., Royal Oak, Michigan, for Appellees.

1

---

**OPINION**

---

SILER, Circuit Judge. Plaintiff, DiPonio Construction Company, Inc. (DiPonio), appeals the district court's decision to grant defendant, International Union of Bricklayers and Allied Craftworkers, Local 9's (Union), motion to dismiss and motion for sanctions. The underlying dispute in this case is whether DiPonio has any obligation under the National Labor Relations Act (NLRA) to bargain with the Union for a new collective bargaining agreement (CBA) following the termination of the parties' previous CBA. At the heart of this question is whether the CBA was entered into pursuant to section 8(f) of the NLRA, 29 U.S.C. § 158(f), or section 9(a) of the NLRA, 29 U.S.C. § 159(a). If the CBA is a § 8 contract, DiPonio had no duty to negotiate for a new CBA; however, if it is a § 9(a) contract it did.

The district court held that even if it possibly had concurrent jurisdiction with the National Labor Relations Board (NLRB) to decide this issue, it would be inappropriate to exercise it. The court also imposed sanctions against DiPonio under Federal Rule of Civil Procedure 11, after finding that the magistrate judge's order denying defendant's motion for sanctions was an abuse of discretion. DiPonio argues that because Count II of its amended complaint alleges the Union breached the CBA by failing to honor the termination provision, the district court had jurisdiction under section 301(a) of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185(a). For the following reasons we AFFIRM the district court's decision in its entirety and DENY the Union's motion for additional sanctions under Rule 38 of the Federal Rules of Appellate Procedure.

I.

DiPonio is a Michigan masonry company that entered into a CBA with the Union. On or about July 31, 2009, DiPonio terminated the CBA according to its terms.[1] Neither party disputes that DiPonio provided sufficient notice under Article XXV of the CBA. The Union, however, alleged that DiPonio refused to bargain for a new CBA, which it claims DiPonio was required to do under the NLRA. As a result, the Union filed an unfair labor practice (ULP) claim with the NLRB on July 31, 2009. The Union's claim alleged that DiPonio failed to bargain with the Union as required by sections 9(a) and 8(a)(5) of the NLRA. The NLRB filed a ULP complaint against DiPonio on February 16, 2010.

On February 11, 2010—five days before the NLRB filed its complaint—DiPonio filed an action in the district court. The original complaint asked the court to declare that DiPonio properly terminated the CBA, and that there was no existing CBA between the two parties. After DiPonio moved for summary judgment on this claim, the Union filed a motion to dismiss, contending that the district court lacked subject matter jurisdiction. DiPonio then amended its complaint to include a breach of contract claim (Count II). Specifically, Count II alleges that the Union "failed to honor DiPonio's termination of the CBA, and instead attempted to force DiPonio to bargain for a new contract and to provide information." DiPonio alleges that the district court had jurisdiction over the contract claim under section 301(a) of the LMRA.

---

[1]The termination provision of the CBA, Article XXV, states:

> This agreement shall continue in full force and effect from August 1, 2006 through July 31, 2009. No more than ninety (90) days and not less than sixty (60) days before the expiration date of this Agreement, either party may give notice to the other that it desires to terminate or modify this Agreement, and upon receipt of such written notice the parties agree to meet and confer for purposes of attempting to negotiate a new Agreement.

> If neither party gives such notice to amend or terminate, this Agreement shall remain in full force and effect from year to year thereafter, unless no more than ninety (90) and not less than sixty (60) days prior to any annual anniversary date, notice be given in writing by either party to the other, indicating a desire to amend or terminate on said annual anniversary date . . . .

In April 2010, the NLRB filed a motion to intervene, informing the district court that it was in the middle of related proceedings involving claims that DiPonio engaged in unfair labor practices. The NLRB also filed a motion to dismiss claiming the court did not have subject-matter jurisdiction because DiPonio's claims are representational, and, therefore, within either the exclusive or primary jurisdiction of the NLRB. Two days later, DiPonio asked the administrative law judge (ALJ) to stay the NLRB proceedings until the district court resolved DiPonio's claims. The ALJ denied the motion to stay.

The magistrate judge issued her Report and Recommendation (R&R) on the pending motions. She recommended the district court find that the NLRB had exclusive jurisdiction over Count I of the amended complaint because whether DiPonio had a continuing duty to bargain with the Union is a representational question. The magistrate judge also recommended that the district court find that even if Count II raised a colorable breach of contract claim, the district court "should decline to exercise jurisdiction over this matter and instead defer to the jurisdiction and expertise of the NLRB." The district court adopted the recommendations.

The Union also sought attorney fees as sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure and the court's inherent powers under 28 U.S.C. § 1927. The magistrate judge denied the Union's motion for sanctions. The district court rejected the magistrate judge's order in part and awarded the Union a portion of its requested attorneys fees.

## II.

## A.

As the district court recognized, this case revolves around whether the CBA was entered into pursuant to § 8(f) or § 9(a) of the NLRA. Under § 9(a), employers are required to bargain with a union that has been designated by a majority of the employees

in a unit for the purposes of collective bargaining with the employer.[2]  Section 8(f) allows unions and employers in the construction industry to enter into CBAs without requiring the union to establish that it has the support of a majority of the employees in the unit covered by the CBA.  *In re Stauton Fuel & Material, Inc.*, 335 N.L.R.B. 717, 718 (2001).  Along with creating an exception to section 9(a)'s rule that unions must demonstrate a showing of majority support, section 8(f) also is an exception to the NLRA's requirement that "the employer is bound to bargain with the exclusive representative even after the contract has expired."  *Int'l Ass'n of Bridge Structural & Ornamental Iron Workers, Local 3 v. NLRB*, 843 F.2d 770, 774 (3d Cir. 1988).  As a result, "[a] construction-industry employer may refuse to bargain after the expiration of an 8(f) agreement because the union never enjoyed the presumption of majority support."  *Strand Theatre of Shreveport Corp. v. NLRB*, 493 F.3d 515, 519 (5th Cir. 2007) (citation omitted).

The district court held that because deciding whether the CBA is a § 8(f) or § 9(a) agreement is primarily representational and overlaps with the proceedings already before the NLRB, it did not have subject-matter jurisdiction to hear DiPonio's claims under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959).  We review the district court's decision to dismiss the case *de novo*.  *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

In *Garmon*, the United States Supreme Court held that "[w]hen an activity is arguably subject to [section] 7 or 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted."  359 U.S. at 245.  Pursuant to section 301(a) of the LMRA, however, federal courts retain jurisdiction over contractual disputes between employers and unions.  Section 301(a) states that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce

---

[2]A "unit" simply refers to any group of employees that would be represented together for collective bargaining.

as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Thus, the NLRB and federal courts may have concurrent jurisdiction over some disputes. This situation arises where a party's conduct leads to charges of both unfair labor practices under the NLRA and breach of a CBA under § 301(a) of the LMRA. *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004) (quoting *Local Union No. 884, United Rubber, Cork, Linoleum & Plastic Workers of Am. v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1356 (8th Cir. 1995)). Concurrent jurisdiction may exist even if the contract dispute involves a representational question, and even if a ruling by the NLRB could provide an alternative remedy. *Paper, Allied-Indus. Chem. & Energy Workers Int'l Union v. Air Prods. & Chems., Inc.*, 300 F.3d 667, 673 (6th Cir. 2002) (quoting *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 268 (1964)).

In *International Brotherhood of Electrical Workers, Local 71 v. Trafftech, Inc.*, 461 F.3d 690 (6th Cir. 2006), we articulated the test for differentiating between cases where the NLRB has exclusive jurisdiction under *Garmon* and those where there is concurrent jurisdiction pursuant to § 301:

> When a dispute is "primarily representational" under § 7 or § 8 of the National Labor Relations Act, "simply referring to the claim as a 'breach of contract' is insufficient for the purposes of § 301 federal courts' jurisdiction," but "matters primarily of contract interpretation, which potentially implicate representational issues," remain within the federal courts' § 301 jurisdiction.

*Id.* at 694-95 (quoting *Air Prods.*, 300 F.3d at 672, 675) (brackets omitted). The *Trafftech* court identified two scenarios in which a dispute will be treated as "primarily representational." *Id.* at 695. The first is "where the [NLRB] has already exercised jurisdiction over a matter and is either considering it or has already decided the matter[.]" *Id.* The other is "where the issue is an 'initial decision in the representation area.'" *Id.* (quoting *Hotel & Rest. Emps. Union Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 565 (2d Cir. 1993)) (brackets omitted). Specifically, we noted that a district

court should not exercise jurisdiction where it could not determine whether the CBA had been violated "without first deciding whether the union was elected as the employees' bargaining representative." *Id.* (quoting *Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc.*, 845 F.2d 1250, 1253 (4th Cir. 1988)). In *Trafftech*, we held that the district court had jurisdiction under § 301, in part, because the NLRB explicitly declined to address the representational issue before, deferring to the district court's concurrent jurisdiction. 461 F.3d at 692.

But just because the NLRB has initiated proceedings does not mean that it will always foreclose a district court from having jurisdiction over all claims between the two parties. *See, e.g.*, *Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Olympic Plating Indus., Inc.*, 870 F.2d 1085, 1089 (6th Cir. 1989). In *Olympic Plating*, a union brought three claims against officers of a local division of the union and an employer, Olympic Plating (Olympic), in district court, and also filed a ULP claim with the NLRB. *Id.* at 1086. The first count asked the district court to enjoin the defendants from violating the union's constitution. The second count alleged that the defendants breached the constitution when they rejected a trusteeship, and the third count demanded an injunction against Olympic to prohibit it from recognizing another union as the authorized representative of Olympic's unionized employees. *Id.* The district court held that all of the claims were preempted by the exclusive jurisdiction of the NLRB. *Id.* at 1087.

We reversed, holding that the first two counts were primarily contract disputes regarding the union's constitution, which the district court had jurisdiction to hear under § 301(a) of the LMRA. *Id.* at 1088. Although there was a NLRB proceeding between some of the parties, we noted that "the NLRB suit did not involve the 'same facts and issues of law' as the instant lawsuit." *Id.* at 1089. Counts one and two required interpreting the union's constitution, whereas the NLRB proceeding involved the statutory rights between Olympic and the union. *Id.* Furthermore, the union did not name the individual officers as defendants in the NLRB action. *Id.*

At the same time, we held that the third count, which alleged that Olympic breached the CBA by recognizing another union, was preempted. *Id.* Even though the claim was styled as a breach of contract claim, we found it was preempted because the question of which organization was the proper bargaining representative of Olympic's employees was clearly a representational matter that the NLRB was already reviewing. *Id.* The fact that Olympic would also breach the CBA by recognizing an improper representative body did not change our analysis. We stated that "[i]n such cases where the Board's resolution of non-contractual issues could also resolve the controversial breach of contract claims brought under § 301, the federal courts should decline to exercise jurisdiction over the contractual allegations." *Id.* We also cautioned that courts must apply this preemption doctrine even when claims are characterized as contract disputes in order to prevent "an end run around provisions of the NLRA under the guise of contract interpretation." *Id.* (quoting *Facetglas*, 845 F.2d at 1252) (quotation marks omitted).

In the instant case, the district court properly concluded that DiPonio's claims are "primarily representational" under the standard articulated in *Trafftech*, despite the fact that Count II alleges a breach of contract. DiPonio's allegation that the Union breached the CBA by failing to recognize that DiPonio properly terminated the contract mischaracterizes the parties' dispute. The Union acknowledges that DiPonio properly terminated the CBA. The issue is whether DiPonio has a duty to negotiate with the Union for a new CBA, and this question turns on the § 8(f)/§ 9(a) distinction. The issue of whether the contract was entered into pursuant to § 8(f) or § 9(a) is the same issue as that before the NLRB. Under *Trafftech*, 461 F.3d at 695, claims are "primarily representational [ ] where the Board has already exercised jurisdiction over a matter and is either considering it or has already decided the matter." While we have held that district courts may retain jurisdiction despite the presence of an ongoing NLRB action, we have done so only where the issues before the district court and the NLRB were different, *see Olympic Plating*, 870 F.2d at 1089, or where the NLRB explicitly declined to decide the issue and instead deferred to the district court, *see Trafftech*, 461 F.3d at

692. Here, the question is the same, and so the matter is representational. Under *Garmon* we defer "to the exclusive competence of the [NLRB]." 359 U.S. at 245.

Because DiPonio's claims are primarily representational, and, therefore, within the exclusive jurisdiction of the NLRB, we uphold the district court's decision to grant the Union's motion to dismiss. Additionally, because the district court properly granted that motion, it did not err by denying DiPonio's motion for summary judgment as moot.

B.

DiPonio also argues that the district court erred by granting the Union's motion for sanctions. The magistrate judge held that, although the Union satisfied Rule 11's safe-harbor provision by providing DiPonio with notice of at least twenty-one days, sanctions were not warranted because federal courts have jurisdiction over contract violations under § 301(a), and concurrent jurisdiction with the NLRB over cases involving claims of both ULPs and breaches of a CBA, and DiPonio advanced both of those theories. With respect to § 1927, the magistrate judge held that she could not "find that the DiPonio has unreasonably and vexatiously multiplied the proceedings in this case, or clearly fallen short of obligations owed to a member of the bar."

The district court held that the magistrate judge abused her discretion in denying the Union's motion for sanctions because it found she did not properly consider: (1) whether Count II had any basis in law or fact; (2) that the Union had been alerted to the *Garmon* preemption doctrine before filing its amended complaint; (3) that there was a pending motion to dismiss when DiPonio filed its amended complaint; or (4) the timing of DiPonio's filings in relation to the ongoing NLRB proceeding.

After reviewing those facts, the district court held DiPonio's claims had no basis in law or fact, that DiPonio did not conduct a "reasonable inquiry" into the law surrounding its claim, and that the purpose of DiPonio's pleadings was to stall the NLRB proceeding. The district court found DiPonio's claims did not have any basis in law because its breach of contract claim did not cite what provision the Union violated, and alleged that the Union violated the agreement after it was terminated. The court faulted

DiPonio for failing to research and discuss *Trafftech*'s analysis of the interplay between *Garmon* preemption and the federal courts' jurisdiction under § 301(a), especially after the Union's counsel informed DiPonio that it believed *Garmon* preempted its claims, and after the NLRB brought the case to DiPonio's attention in its motion to dismiss. Finally, the district court concluded that DiPonio's purpose was to stall the NLRB's proceedings because DiPonio filed its amended complaint two weeks after the NLRB filed a ULP complaint against it.[3] As a result, the district court sanctioned DiPonio for the costs and attorney fees the Union incurred after DiPonio filed its amended complaint.

We review a district court's decision to impose sanctions under Rule 11 for abuse of discretion. *Jones v. Ill. Cent. R.R.*, 617 F.3d 843, 850 (6th Cir. 2010). DiPonio argues that the district court abused its discretion by rejecting the magistrate judge's decision without the benefit of holding its own evidentiary hearing on the matter. This argument is without merit. "In this circuit, there is no requirement that a full evidentiary hearing be held before imposing sanctions." *Wilson-Simmons v. Lake Cnty. Sheriff's Dep't*, 207 F.3d 818, 822 (6th Cir. 2000). All that is required is that the party "be given notice and an opportunity to be heard." *Id.* (quoting *Cook v. Am. S.S. Co.*, 134 F.3d 771, 775 (6th Cir. 1998)). This test was clearly met, as the Union's motion for sanctions put DiPonio on notice, DiPonio was able to brief the issue, and there was a hearing before the magistrate judge. Furthermore, "'[i]t is within the discretion of the district court to determine whether an evidentiary hearing would assist the court in its decision.'" *Id.* at 823 (quoting *Cook*, 134 F.3d at 775).

DiPonio also argues that the district court abused its discretion by making its own factual findings, as opposed to reviewing the magistrate judge's findings for clear error, and by holding that the magistrate judge abused her discretion. DiPonio contends that sanctions are not warranted simply because it failed to analyze *Trafftech* when the Union did not cite that case, the NLRB only cited it once in a footnote of a brief filed months after DiPonio amended its complaint, and the magistrate judge did not ask about it at oral

---

[3]Because the district court found sanctions were appropriate under Rule 11, it did not address whether sanctions pursuant to the court's inherent powers under 28 U.S.C. § 1927 were appropriate.

argument, nor did she cite it in her R&R.  Finally, DiPonio claims that the district court should not have awarded the Union sanctions because the conclusion it ultimately reached did not even explicitly hold the NLRB had exclusive jurisdiction. However, the district court found that DiPonio's contention that the district court had jurisdiction over the claim under § 301 had no "basis in law or fact."

The district court did not abuse its discretion in finding some of the facts that it relied on when granting the motion for sanctions.  For example, the court did not abuse its discretion in finding that DiPonio is alleging that the Union breached a CBA that had already been terminated.  It is also true that Count II of the amended complaint does not indicate what provision of the CBA the Union allegedly breached.  Furthermore, DiPonio's argument that the Union breached the CBA by failing to honor the termination provision does not seem to be a true breach of contract claim.  The termination provision does not speak at all to whether the contract is a § 8(f) or § 9(a) agreement, and it is difficult to see how believing that the CBA is a § 9(a) contract fails to honor the termination provision.  Additionally, the Union's claim in the NLRB is a ULP claim, and bringing such a claim does not breach the CBA.

Ultimately, the district court did not abuse its discretion in awarding the Union sanctions under Rule 11.  Although the district court's opinion could be read as somewhat inconsistent, under *Trafftech*, DiPonio's claims are clearly "primarily representational" and fall within the primary jurisdiction of the NLRB. Furthermore, the timing and circumstances under which DiPonio's breach of contract claim was added–especially in light of DiPonio's motion with the NLRB to stay those proceedings–support the district court's conclusion that DiPonio's conduct was contrived to avoid or stall the NLRB's proceedings.  Five days after DiPonio filed its initial complaint, the NLRB filed a ULP complaint against DiPonio.  The Union then filed its motion to dismiss and draft motion for sanctions.  DiPonio then filed its amended complaint alleging a breach of contract claim for the first time.

III.

Rule 38 of the Federal Rules of Appellate Procedure "affords us discretion to assess just damages when confronted with a frivolous appeal." *Miller v. Toyota Motor Corp.*, 554 F.3d 653, 654 (6th Cir. 2009) (quoting *Burlington N. R.R. v. Woods*, 480 U.S. 1, 7 (1987)) (quotation marks omitted). Rule 38 states that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."

Sanctions under Rule 38 are not appropriate. It cannot be said that DiPonio's entire appeal is wholly without merit, at least with respect to its appeal of the district court's decision to grant the original motion for sanctions. If nothing else, the magistrate judge and the district court disagreed about the propriety of sanctions in this case, and DiPonio had a right to appeal that decision to this court in the hope that we might side with the magistrate judge.

Also, that the district court did not abuse its discretion in granting the motion for sanctions does not mean this court must award further sanctions. Although there is a strong argument that DiPonio's appeal of the district court's decision to dismiss has no basis in law or fact, we were not able to find, and neither party directed us to, a single case that explicitly held that deciding whether a contract is a § 8(f) or § 9(a) agreement is a representative matter or one within the NLRB's exclusive jurisdiction. Accordingly, we deny the Union's motion for additional sanctions under Rule 38.

IV.

For the reasons stated above, we AFFIRM the district court's decision to dismiss DiPonio's claims for lack of subject-matter jurisdiction and to award sanctions under Rule 11, but DENY the Union's motion for further sanctions because the appeal is not wholly without merit.