NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0395n.06

Case No. 16-3737

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 03, 2017
DEBORAH S. HUNT, Clerk

DHSC, LLC, d/b/a Affinity Medical Center,          )
                                                   )
    Plaintiff-Appellant,                          )
                                                   )
                                      )          ON APPEAL FROM THE UNITED
v.                                                 )          STATES DISTRICT COURT FOR
                                                   )          THE NORTHERN DISTRICT OF
CALIFORNIA NURSES                                  )          OHIO
ASSOCIATION/NATIONAL NURSES                        )
ORGANIZING COMMITTEE, AFL-CIO,                     )
                                                   )
    Defendant-Appellee.                           )

_____/

Before: MERRITT, GILMAN, and DONALD, Circuit Judges.

**MERRITT, Circuit Judge.** In this case brought under the Labor Management Relations Act by plaintiff DHSC, LLC, d/b/a Affinity Medical Center ("Affinity"), against the California Nurses Association/National Nurses Organizing Committee, AFL-CIO ("Union"), Affinity claims that the Union violated a so-called "implied" agreement to arbitrate election disputes by filing charges with the National Labor Relations Board ("Board"). The district court dismissed Affinity's complaint for lack of subject-matter jurisdiction because federal case law holds that it cannot exercise jurisdiction over "primarily representational" claims that have been decided by the Board. On appeal, Affinity argues that its claim is not primarily representational, but is instead a matter of contract interpretation within federal court jurisdiction.

We agree with the district court that this case has been decided by the National Labor Relations Board. Although Affinity characterizes its complaint as presenting a contract interpretation issue, this case is fundamentally about whether the Union was properly elected and certified as the bargaining representative of Affinity's employees. The Board expressly rejected Affinity's argument that relies on the alleged existence of an implied agreement to arbitrate representational disputes. That decision is now on appeal to the D.C. Circuit as part of the Union's unfair labor practices claim against Affinity.

Alternatively, we find that Affinity signed an express agreement recognizing the Board's authority over representational disputes, and this agreement makes it clear that no implied agreement to arbitrate representational disputes exists. Accordingly, we affirm the judgment of the district court.

## I. Factual and Procedural Background

Affinity Medical Center is a medical facility in Massillon, Ohio that employs registered nurses. In early 2012, the nurses explored joining a labor union, the California Nurses Association. During that time, the Union and Affinity negotiated a "Labor Relations Agreement" to govern the organization efforts of the nurses. The Labor Relations Agreement provided that "[t]he Parties agree to submit any unresolved disputes about [the Agreement] to final and binding arbitration[.]" The Labor Relations Agreement also incorporated a document called the "Election Procedure Agreement" that stated, "[i]f the parties are unable to resolve a dispute, either party may . . . submit the unresolved dispute about [the election procedures] for final and binding resolution by . . . the permanent Arbitrator[.]" But neither the Labor Relations Agreement nor the Election Procedure Agreement was ever signed or executed by the parties.

Subsequently, the initial negotiations between the parties soured. On August 20, 2012, the Union directly petitioned the National Labor Relations Board to represent the nurses as their exclusive bargaining representative in the negotiations with Affinity. Two days later, both Affinity and the Union signed a "Consent Election Agreement" using the Board's standard form, which the Board's Regional Director approved. This agreement recognized the Regional Director, not an arbitrator, as the final authority over representational disputes. Paragraph 12 of the Consent Election Agreement states:

> Objections to the conduct of the election or conduct affecting the results of the election, *or to a determination of representation based on the results of the election*, may be filed with the Regional Director within 7 days after the tally of ballots has been prepared and made available to the parties . . . . The method of investigation of objections and challenges, including whether to hold a hearing, shall be determined by the Regional Director, *whose decision shall be final*.

(emphasis added). At the time of the agreement's signing, neither party informed the Regional Director of any prior agreements governing election disputes.

On August 29, 2012, the Board's Regional Office conducted an election to determine whether the Union would represent the nurses. The Union received one hundred votes, while ninety-six votes were cast against it. Although the Union won the election to represent the nurses, Affinity challenged the legitimacy of seven of the ballots. Since seven ballots could have swung the vote, the Board's Regional Director launched an investigation into the election. On September 7, 2012, the Regional Director requested that Affinity provide supporting evidence for its objections regarding the election, warning that a failure to do so "will result in [Affinity's] objections being overruled without further investigation." Despite the warning, Affinity provided no evidence to support its objections, nor did it request a time extension to submit evidence. On September 21, 2012, the Regional Director issued a "Report on Challenged Ballots and Objections," recommending that Affinity's objections be overruled because it did not submit

any evidence. The Report allowed four of the seven challenged ballots to be counted, which did not change the outcome of the election. Accordingly, a majority of the voters were still in favor of unionizing, and, on October 5, 2012, the Regional Director certified the Union as the National Labor Relations Act Section 9(a) representative of the Affinity nurses. 29 U.S.C. § 159(a).[1]

The Union, in its capacity as the nurses' representative, attempted to begin bargaining with Affinity. Affinity allegedly refused to bargain with the Union and denied the Union representatives access to Affinity's facilities. Affinity also allegedly took adverse actions against nurses who had been associated with organizing activities. The Union consequently filed charges with the National Labor Relations Board, alleging that Affinity's actions amounted to unfair labor practices. Responding to the charges, the National Labor Relations Board's Office of General Counsel investigated and issued a complaint on March 29, 2013, alleging that Affinity had violated the National Labor Relations Act. Among Affinity's defenses to the General Counsel's complaint was the argument that the Board's certification of the Union was unenforceable because "the election was conducted pursuant to . . . an oral 'ad hoc' agreement by which the parties gave exclusive jurisdiction to determine challenged ballots and objections to an arbitrator[.]" *DHSC, LLC*, 2013 NLRB LEXIS 483, at *7 (April 30, 2015). Affinity claimed that the prior negotiations between the parties had implied the existence of a binding agreement to arbitrate election disputes despite the failure to execute any such agreement.

On July 1, 2013, an Administrative Law Judge assigned to the case rejected all of Affinity's defenses, finding that Affinity had violated multiple provisions of the National Labor Relations Act through its conduct toward the Union and Affinity's own employees. *Id.* at *82–

---

[1] Section 9(a) of the National Labor Relations Act states: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment. . . ." 29 U.S.C. § 159(a).

83. Addressing Affinity's affirmative defense concerning an oral "ad hoc" agreement to arbitrate, the Judge found that Affinity had waived the argument by failing to submit evidence of such an agreement to the Board's Regional Director and by entering into the Consent Election Agreement that gave final authority over election disputes to the Regional Director. *See id.* at *7–8.

On April 30, 2015, a three-member panel of the Board, reviewing the findings of the Administrative Law Judge, issued a decision for the Union, finding that Affinity had violated the National Labor Relations Act. *DHSC, LLC*, 362 NLRB No. 78, 2015 WL 1956191, at *1 (April 30, 2015). The panel still rejected Affinity's defense that an implied agreement had given authority to an arbitrator to determine election disputes instead of the Board. *See id.* at *1 n.3 ("[W]e reject on different grounds [Affinity's] defense that an oral ad hoc agreement between the parties gave exclusive jurisdiction to an arbitrator to determine the complaint allegations."). In addition to finding that no formal agreement to arbitrate existed, the panel also found there was not "a long and productive collective bargaining relationship" between the parties that would imply the existence of such an agreement. *See id.* Affinity's appeal of that decision and the Board's cross-application for enforcement of the order are currently pending before the United States Court of Appeals for the District of Columbia Circuit.[2]

Affinity also filed an Amended Complaint in the United States District Court for the Northern District of Ohio, alleging that the Union was liable under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), for breaching the so-called "ad hoc" or "implied" agreement to submit election disputes to arbitration. Despite the failure to sign any arbitration agreement and the execution of the "Consent Election Agreement" provided by the

---

[2] The case, *DHSC, LLC v. NLRB*, Nos. 15-1426, 15-1499, is in abeyance pending the resolution of another case before the D.C. Circuit, *Hospital of Barstow v. NLRB*, Nos. 16-1289, 16-1343.

Board, Affinity's complaint alleged that the parties agreed to arbitration and that the Union "breached the Agreement by, among other acts and conduct, failing and refusing to submit unresolved disputes to final and binding arbitration as required by the Agreement." Affinity requested relief in the form of damages and interest for the Union's alleged breach of the "implied contract," an order that the Union submit to arbitration, a declaratory judgment to that effect, an order for a speedy hearing pursuant to Fed. R. Civ. P. 57, and attorneys' fees.

On December 4, 2015, the Union filed a motion to dismiss Affinity's district court claim for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), which the court construed as a Rule 12(c) motion for judgment on the pleadings. The district court granted the motion to dismiss, reasoning that the Board had already decided the fundamental issues in the claim Affinity presented. The court recognized that labor claims deemed to be "primarily representational" disputes are under the primary jurisdiction of the Board, and found that Affinity "failed to identify any disputes that [fell] outside primarily representational preemption."

Now on appeal, Affinity continues to challenge the district court's finding that the National Labor Relations Board has already exercised exclusive jurisdiction over the representational dispute at the center of the complaint. Affinity argues that the Union breached an implied agreement to arbitrate election disputes "by refusing to join Affinity in requesting that the Board hold resolution of its unfair labor practices in abeyance or submit its challenges in arbitration" and "breached the parties [sic] Implied Agreement regarding post-election access." Accordingly, Affinity asserts on appeal that the dispute cannot be "primarily representational" because it involves only pre-election and post-election conduct. In a related argument, Affinity contends that the issue before the court is primarily one of contract interpretation, and that the

Board's certification of the election and Union's status as the nurses' representative are merely peripheral issues.

## II. Analysis

We review *de novo* a district court's decision to dismiss a complaint for lack of subject-matter jurisdiction. *Joelson v. United States*, 86 F.3d 1413, 1416 (6th Cir. 1996). Federal courts are courts of limited jurisdiction, and the plaintiff has the burden of proving jurisdiction to survive a motion to dismiss. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). That jurisdiction extends only to cases that the Constitution and Congress have empowered the federal courts to resolve. *See id.* To comply with jurisdictional boundaries, a plaintiff "must allege in his pleading the facts essential to show jurisdiction . . . [and] must carry throughout the litigation the burden of showing that he is properly in court." *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

Section 301(a) of the Labor Management Relations Act provides district courts with jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees[.]" 29 U.S.C. § 185(a). This jurisdiction includes the power to grant a contracting party "specific enforcement of an arbitration clause in a collective-bargaining agreement." *Buffalo Forge Co. v. United Steelworkers of Am.*, 428 U.S. 397, 420 (1976). In reviewing such claims under Section 301(a), "a court's role is limited to deciding if the party seeking arbitration is making a claim which on its face is governed by the contract." *Int'l Bhd. of Elec. Workers, Local 71 v. Trafftech, Inc.*, 461 F.3d 690, 693 (6th Cir. 2006) (quoting *Gen. Drivers, Salesmen & Warehousemen's Local Union No. 984 v. Malone & Hyde Inc.*, 23 F.3d 1039, 1043 (6th Cir. 1994) (internal quotation marks omitted)).

However, while district courts have concurrent authority over collective bargaining disputes between unions and employers, the federal courts must recognize the primary jurisdiction of the National Labor Relations Board over disputes concerning employees' right to organize. *See San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244–45 (1959). A dispute is representational when it "implicates an employer's statutory duty . . . to bargain collectively with a union chosen under [Section 9(a) of the National Labor Relations Act, 29 U.S.C. 159(a)]." *United Steel, Paper, & Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union v. Ky. W. Va. Gas Co., LLC*, 795 F. Supp. 2d 596, 599 (E.D. Ky. 2011) (citing *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 266 (1964)). There is a strong policy presumption in favor of using the Board procedures to decide disputes involving issues of union representation to promote industrial peace. *See Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc.*, 845 F.2d 1250, 1252 (4th Cir. 1988). To that end, the Supreme Court has recognized the Board as the tribunal of "exclusive primary competence" for deciding representational labor issues. *See Garmon*, 359 U.S. at 244–45.

There are at least two circumstances where "primarily representational" disputes require the exclusive jurisdiction of the Board: "where the Board has already exercised jurisdiction over a matter and is either considering it or has already decided the matter, or where the issue is an initial decision in the representation area[.]" *See Trafftech, Inc.*, 461 F.3d at 695 (internal citations and quotation marks omitted). Meanwhile, matters primarily concerning contract interpretation remain within federal court jurisdiction. *See id.* at 695 (citing *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Air Prods. & Chems., Inc.*, 300 F.3d 667, 675 (6th Cir. 2002)). Accordingly, where a dispute is brought under Section 301 of the Labor Management Relations Act, the district court properly defers to the primary jurisdiction of the Board if (1) the

Board has exercised jurisdiction over a dispute involving representation, or (2) resolving the dispute requires an initial decision in the representation area. *See DiPonio Constr. Co., Inc. v. Int'l Union of Bricklayers & Allied Craftworkers, Local 9*, 687 F.3d 744, 750 (6th Cir. 2012). In the present case, Affinity's complaint is "primarily representational" under both prongs, and is therefore under the primary jurisdiction of the Board.

Turning to the first of the two "primarily representational" prongs, we ask whether or not the National Labor Relations Board has already exercised jurisdiction over the issue at the center of Affinity's complaint, namely: did the Union breach an implied contract with Affinity by pursuing unfair labor practices violations with the Board instead of with an arbitrator? If the Board "has already exercised jurisdiction over a matter and is either considering it or has already decided the matter," the dispute is deemed primarily representational. *See Trafftech*, 461 F.3d at 695. We agree with the district court that the Board has already exercised its jurisdiction over this issue.

On October 5, 2012, the Regional Director of the Board, pursuant to his final authority over election challenges outlined in the Consent Election Agreement signed by both parties, certified the Union as the nurses' representative. In April 2015, a three-member panel of the Board issued a decision explicitly rejecting Affinity's arguments concerning an "oral ad hoc agreement" to arbitrate the election challenges. *See DHSC, LLC*, 2015 WL 1956191, at *1 n.3 (citing *Ariz. Portland Cement Co.*, 281 NLRB 304, at *1 n.2 (1986)) The district court in the present case found that when the Board addressed Affinity's argument during the 2015 case, the Board determined whether election challenges should be decided by the Board or an arbitrator. Thus, the district court reasoned that the Board "definitively decided" the dispute brought in Affinity's complaint.

On appeal, Affinity claims the district court was in error because Affinity does not technically seek to undo the Board's certification of the election, but instead asserts breaches of contract that occurred before and after the election. Affinity argues that by allowing a union to breach an implied contract with an employer and then "strip federal courts of subject-matter jurisdiction to hear such disputes (if [Board] proceedings are subsequently initiated)," a union can simply file a petition with the Board to deny an employer a forum to hear its contract claim.

Affinity's timing argument is unconvincing. The plain language of the statute outlining the Board's jurisdiction says nothing about limitations on whether the conduct occurs before or after a Board-certified election. See 29 U.S.C. § 159(c)(1). The statute reads in relevant part:

> Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board . . . [,] the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice.

29 U.S.C. § 159(c)(1). The Board's jurisdiction, pursuant to the above statute, kicked in as soon as the Union filed its original election petition. The Board then decided the issue at the center of this dispute – whether the Union was properly elected as the representative of the nurses. Since at least the time it began considering the election of the Union, the Board had primary jurisdiction over representational disputes between the parties, including those in the present case. *See Trafftech, Inc.*, 461 F.3d at 695. Affinity cannot cite convincing support that this is the incorrect result.

Moreover, the original unfair labor practices suit brought by the Union is now pending on appeal before the D.C. Circuit. In that proceeding, an appellate court will be able to review Affinity's challenges to the election. The district court below recognized that it couldn't effectively reverse the Board's resolution of the question "whether the Board can decide the election challenges." That issue must instead work its way through the proper procedures in the

D.C. Circuit. *See Bakers Union Local No. 4 of Greater St. Louis v. Schnuck Baking Co. Inc.*, 614 F. Supp. 178, 182 (E.D. Mo. 1985) (finding that a district court cannot compel arbitration between an employer and a union on an issue of representation that has been decided by the Board).

Turning to the second "primarily representational" prong, the Board has primary jurisdiction over labor disputes requiring "an initial decision in the representation area." *See DiPonio Constr. Co., Inc.*, 687 F.3d at 750 (quoting *Hotel & Rest. Emps. Union Local 217 v. J.P. Morgan Hotel*, 996 F.2d 561, 565 (2nd Cir. 1993) (brackets omitted)). Although Affinity frames its complaint as: "whether the Union breached an implied contract by pursuing unfair labor practices violations with the Board instead of an arbitrator," the complaint actually requires the district court to determine whether the Board has the authority to decide election challenges, and therefore the outcome of the election itself. *See Trafftech, Inc.*, 461 F.3d at 695 ("[W]here the court could not possibly determine whether there has been a violation of the collective bargaining agreement without first deciding whether the union was elected as the employees' bargaining representative, the district court should not exercise jurisdiction" (quoting *Amalgamated Clothing & Textile Workers Union*, 845 F.2d at 1253) (internal quotation marks omitted)). At its core, Affinity's challenge to the Board's authority over the election is a challenge to the Union's representational rights. To fulfill Affinity's claim for relief, a court would have to revoke the Board's certification of the Union as the nurses' representative.

Affinity asserts that the district court could have granted relief without reaching an initial decision concerning representation, arguing that the complaint involves contract interpretation and not the Union's election. In arguing that this is a case fundamentally about whether a contract exists, Affinity relates the case to labor disputes where representational issues are

peripheral. *See Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 815 F.3d 834, 843 (D.C. Cir. 2016). Affinity claims that its argument concerning the so-called "implied" agreement is outside the scope of the board decision currently before the D.C. Circuit. *See Int'l Union of Operating Eng'rs, Local 18 v. Laborers' Int'l Union of N. Am.*, 580 F.App'x 344, 346 (6th Cir. 2014). In Affinity's view of the case, the district court below needed only to decide whether an actual agreement existed and whether the Union violated it.

It is true that when an arbitration clause is merely "related" to labor representation issues, the federal courts do not necessarily lack jurisdiction to hear the claim. *See Carey*, 375 U.S. at 268. This court, following Supreme Court precedent, has held that "even if the contract dispute involves a representational question, and 'even though an alternative remedy before the Board . . . is available,' under Section 301(a) of the [Labor Management Relations Act], federal courts have jurisdiction to enforce an arbitration clause." *Paper, Allied Indus., Chem. & Energy Workers Int'l Union*, 300 F.3d at 673 (quoting *Carey*, 375 U.S. at 268.). The mere fact that an arbitral award *might* lead to eventual conflict with a Board's ruling is not in itself a barrier to pursuing a claim in the district courts. *See Carey*, 375 U.S. at 268. Accordingly, "the [Board] and federal courts may have concurrent jurisdiction over some disputes" brought under Section 301 of the Labor Management Relations Act. *See DiPonio Constr. Co., Inc.*, 687 F.3d at 749. This court has characterized these circumstances where the federal courts can exercise concurrent jurisdiction as "collaterally representational" disputes. *See Trafftech, Inc.*, 461 F.3d at 695.

The circumstances do not indicate that the case before us is a "collaterally representational" contract dispute. *See Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, & Helpers v. Olympic Plating Indus., Inc.*, 870 F.2d 1085, 1089 (6th Cir.

1989) (declining to exercise jurisdiction over a preempted dispute that is disguised as a breach of contract claim). Instead, this case is fundamentally about whether or not the Union is a legitimate representative of the nurses. Affinity has couched the complaint as a breach of contract claim, but that does not change the reality of the case. "When a dispute is primarily representational . . . simply referring to the claim as a 'breach of contract' is insufficient for the purposes of § 301 federal courts' jurisdiction." *Trafftech, Inc.*, 461 F.3d at 695 (citing *Paper Workers Int'l Union*, 300 F.3d at 675) (brackets and internal quotation marks omitted). Affinity's claim appears to be an attempted "end run" around the proper procedures for deciding these disputes. *See Olympic Plating Indus., Inc.*, 870 F.2d at 1089.

That there is a representational issue at the heart of this complaint is obvious from Affinity's requests for relief. Affinity seeks specific performance of the so-called "implied" agreement's terms, including submission of unresolved disputes to arbitration, and a declaratory judgment to that effect. Affinity claims that, to award relief, a district court need only decide whether an actual agreement existed. But this "initial decision" about whether or not the implied agreement exists effectively decides the representational question of whether the Union was legitimately elected. The Board's decision in the original unfair labor practices suit relied on the factual predicate that the Union was properly elected as the nurses' representative. Similarly, in the present case, the status of the Union as the nurses' representative is a determination that would have to be made to decide whether to compel the parties to arbitrate. The Board has exclusive competence to make such a status determination, and therefore has primary jurisdiction in this case. *See Garmon*, 359 U.S. at 245.

Affinity also argues that the legislative history of Labor Management Relations Act Section 301, 29 U.S.C. § 185, proves that Congress did not intend for the district court to decline

jurisdiction in this case. The purpose of Section 301 was to expand the availability of forums to hear disputes about employer-union agreements. *See Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 508 (1962). However, Affinity was not denied a forum to hear its claim that the contract existed, as the issue was put to the Board in 2015. *See DHSC, LLC*, 2015 WL 1956191, at *1 n.3. While there is a congressionally developed presumption in favor of arbitration in cases that turn on interpretations of collective bargaining agreements, the Board has already decided that no such agreement existed between the parties here. The purpose of Section 301 is not "'to vest in the courts initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units' under the guise of interpreting the collective bargaining agreement." *Local Union 204 of Int'l Bhd. of Elec. Workers v. Iowa Elec. Light & Power Co.*, 668 F.2d 413, 418 (8th Cir. 1982) (quoting *Local 3-193 Int'l Woodworkers of Am. v. Ketchikan Pulp Co.*, 611 F.2d 1295, 1301 (9th Cir. 1980) (footnote omitted)). The case before us turns on a jurisdictional question and not on contractual language. *See Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78–79 (1998). Accordingly, the legislative history of Section 301 does not create a presumption toward arbitration here.

Finally, Affinity's challenge to the Board's authority to make election decisions is seriously undermined by the fact that it signed an agreement explicitly giving the Board's Regional Director the final authority to rule on election challenges and objections. To once again quote the Consent Election Agreement, signed and executed by both parties: "Objections to the conduct of the election or conduct affecting the results of the election, or to a determination of representation based on the results of the election, may be filed with the Regional Director . . . whose decision shall be final." This decisive language should end the matter. Accordingly, we **AFFIRM** the judgment of the district court.