RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0227p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED FOOD & COMMERCIAL WORKERS, LOCAL 1995,

*Plaintiff-Appellee*,

*v.*

KROGER CO.,

*Defendant*,

KROGER LIMITED PARTNERSHIP I,

*Defendant-Appellant*.

No. 22-5085

─────────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:20-cv-00948—Eli J. Richardson, District Judge.

Decided and Filed:  October 14, 2022

Before:  SILER, McKEAGUE, and LARSEN, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:**  James A. Mills, David A. Nenni, JACKSON LEWIS, P.C., Cincinnati, Ohio, for Appellant.  David W. Garrison, Scott P. Tift, BARRETT JOHNSTON MARTIN & GARRISON, LLC, Nashville, Tennessee, for Appellee.

SILER, J., delivered the opinion of the court in which McKEAGUE, J., joined. LARSEN, J. (pp. 15–22), delivered a separate dissenting opinion.

---

**OPINION**

---

SILER, Circuit Judge.   Kroger Limited Partnership I appeals the district court's order granting the motion for judgment on the pleadings brought by United Food & Commercial Workers, Local 1995.  For the following reasons, we **AFFIRM**.

**I.**

This is an arbitration dispute between Kroger Limited Partnership I ("KLPI") and United Food & Commercial Workers, Local 1995 (the "Union").  KLPI operates Kroger grocery stores throughout Tennessee.  It is a separate entity within "The Kroger Company" family and has its own collective bargaining agreement ("CBA") with the Union.  *Id.*  For several years, the Union has represented "all full-time and part-time employees" in KLPI's stores that are located in the "Nashville Division."  The Nashville Division includes Nashville, Tennessee, and the greater Knoxville, Tennessee, area.  Unionized employees perform any services connected to handling merchandise "for sale" in KLPI's "retail establishments[.]"

Over several years, KLPI has operated different retail-store configurations within the Nashville Division.  They included rural stores, urban stores, small stores, large stores, stores with and without gas stations, and so-called "Marketplace" stores with large non-grocery departments.  Through a series of CBAs, the Union has represented all retail-store employees working in these stores.  And the Union has immediately represented the employees in any new store that KLPI opened in the Nashville Division.

After several years of cooperation, KLPI and the Union found themselves at an impasse. In mid-2020, the "Supply Chain Division" of The Kroger Company opened a warehouse called the Knoxville Local Fulfillment Center.  Soon after the warehouse opened, the Union filed a grievance with The Kroger Company, claiming that the Union represented employees at that facility—which the Union called the "Knoxville eCommerce Store."  In its grievance, the Union described how employees at the warehouse fill orders placed not by Kroger grocery stores, but by Walgreens pharmacies.  The Union complained that employees who pick and deliver these

orders for Kroger's so-called "customer" were performing "fundamental[ly] bargaining[-]unit work." The Union called these employees "pickers" and "drivers" and likened them to unionized retail-store employees at KLPI's grocery stores. The Union therefore demanded The Kroger Company and KLPI extend union benefits to the "pickers" and "drivers."

KLPI refused to process the Union's grievance for itself or the Kroger Company. It claimed that the Knoxville Local Fulfillment Center is a warehouse, not a grocery store, and that it is part of The Kroger Company's "supply chain network," which is independent from retail stores operated by KLPI. KLPI also explained that it has no relationship with employees at the facility and, consequently, that the facility is not a "store covered by the CBA." In response, the Union pursued arbitration under Article VII § D of their CBA, which governs grievances that concern "the interpretation or application of this [CBA]." KLPI, however, refused to arbitrate the grievance.

The Union sued The Kroger Company to compel arbitration and, in its amended complaint, added KLPI as a defendant. The Kroger Company and KLPI answered. In response, the Union moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The district court determined the Union's claim was arbitrable under the CBA but denied the motion as to The Kroger Company because the answer had denied The Kroger Company was a party to the agreement. The district court granted the motion as to KLPI, however, and ordered arbitration.[1] KLPI now appeals the district court's order granting in part the Union's motion for judgment on the pleadings.

**II.**

We review de novo a district court's order granting a Rule 12(c) motion for judgment on the pleadings. *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021). Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). We assess such motions "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)," *Moderwell*

---

[1]Upon the Union's subsequent motion, the district court dismissed The Kroger Company without prejudice. That order is not on appeal.

*v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021) (citation omitted)—that is, with one caveat. When the plaintiff, as opposed to the defendant, moves for judgment on the pleadings, instead of asking whether the "complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted), we ask "whether the plaintiff's petition, stripped of those allegations which are denied by the defendant's answer, would leave the petition stating a cause of action against the defendant." 61A Am. Jur. 2d *Pleading* § 497; *see also Bass v. Hoagland*, 172 F.2d 205, 207 (5th Cir. 1949) ("[T]he fact allegations of the answer are to be taken as true, but those of the complaint are taken as true only where and to the extent that they do not conflict with those of the answer.").

With that one caveat, the same rules apply. We may consider exhibits that are referenced in the complaint and central to its claims. *See Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 695 (6th Cir. 2018) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). We will not blindly accept legal conclusions nor draw unwarranted factual inferences from either the complaint or the answer. *See Barber v. Charter Twp. of Springfield,* 31 F.4th 382, 387 (6th Cir. 2022) (citation omitted). After we accept the answer's well-pleaded allegations as true and construe the pleadings and exhibits in a light most favorable to the defendant, "the motion may be granted only if the [plaintiff] is nevertheless clearly entitled to judgment." *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973); *see also Murray v. Ohio Adult Parole Auth.*, 916 F.2d 713, at *2 (6th Cir. 1990) (Table) (citing *Nat'l Metro. Bank v. United States*, 323 U.S. 454, 456–57 (1945)).

**III.**

**A. Arbitration Agreement**

Our consideration of the Union's arbitration claim has a settled framework. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). We "engage in a limited review" to determine whether the grievance is arbitrable. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). To do so, we must find "a valid agreement to arbitrate" and determine whether the grievance "falls within the substantive scope of that agreement." *Id.* The parties agree Article VII § D of their CBA includes a mandatory arbitration agreement, which

governs grievances that concern "the interpretation or application of this [CBA]." While the district court passingly expressed its concern that this section only permitted, as opposed to mandated, arbitration, the parties have not raised this concern on appeal. So we need only determine whether the Union's grievance falls within the substantive scope of their arbitration agreement. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor . . . its enforceability or applicability to the dispute is in issue. *Where a party contests* either or both matters, the court must resolve the disagreement." (emphasis added) (internal quotation and citations omitted)).

The Union's grievance clearly falls within the substantive scope of the arbitration agreement. In its grievance, the Union asserted that KLPI must recognize the Union as the employee representative at the Knoxville Local Fulfillment Center. The grievance is based on the Union's allegation that the Knoxville Local Fulfillment Center is a "store[] of the Kroger Company, Nashville Division," under Article 3 § A of the CBA. According to that section, this would establish the Union as the "sole and exclusive bargaining agent for all full-time and part-time employees" at the Knoxville Local Fulfillment Center. The Union's grievance thus falls within the scope of arbitration agreement because it concerns the "interpretation or application of this [CBA]"—that is, Article 3 § A of the CBA.

As it falls within the scope of the arbitration agreement, we apply the presumption of arbitrability to the grievance. *AT & T Techs., Inc.*, 475 U.S. at 650. This presumption requires us to "resolve any doubts in favor of arbitration" and prohibits denying an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Mead Corp., Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir. 1994) (citing *AT & T Techs., Inc.*, 475 U.S. at 648–51). This presumption is "particularly applicable" in the case of a "broad" arbitration agreement, like the one here. *See, e.g.*, *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 279 (6th Cir. 2007) (applying the presumption of arbitrability to an arbitration agreement covering "any dispute . . . as to the interpretation or application of this Agreement."). To rebut the presumption of arbitrability, KLPI must identify either an "express provision excluding [the]

. . . grievance from arbitration" or "forceful evidence of a purpose to exclude the claim from arbitration." *AT & T Techs., Inc.*, 475 U.S. at 650 (citation omitted).  KLPI can do neither.

###### i.       Express Exclusion

KLPI contends that three provisions in the CBA expressly exclude the Union's grievance from arbitration.  For example, KLPI notes that Article 3 § A—the clause relied upon by the Union—only establishes the Union as the employee representative for "The Kroger Company, Nashville Division," *i.e.*, KLPI's grocery stores.  This provision excludes the Union's grievance from arbitration, KLPI believes, because employees at the Knoxville Local Fulfillment Center are employed by The Kroger "Supply Chain Division"—not KLPI.  But the Union argues that, if The Kroger "Supply Chain Division" employs the individuals, then KLPI breached Article 3 § A of the CBA when The Kroger Company surreptitiously opened a warehouse through the "Supply Chain Division," instead of a grocery "store" through KLPI.  Put another way, the grievance assumes Article 3 § A *required* KLPI to employ the warehouse employees.

KLPI also points to the provision limiting "bargaining[-]unit work" to services related to selling products "in the Employer's retail establishments."  This provision equally excludes the Union's grievance, KLPI argues, because the Knoxville Local Fulfillment Center is a warehouse, not a "retail establishment."  Third, and relatedly, KLPI points to the provision that permits only union members to stock products that were distributed "through a Kroger distribution system."  KLPI claims this provision implies that employees of the "Kroger distribution system" are not covered by the CBA, and consequently the Union's grievance is excluded from arbitration because the warehouse employees it seeks to represent are a part of that "distribution system."  The Union agrees that the CBA does not cover warehouses.  Its argument is that the Fulfillment Center is "the latest iteration of a Kroger store because it receives Kroger product from the Kroger supply chain, stocks Kroger product on its shelves, and then sells Kroger product to the public -- albeit to different individual Walgreens stores."

But none of these provisions KLPI points to "clearly and unambiguously" exclude the Union's grievance from arbitration. *Bakery, Confectionery, Tobacco Workers and Grain Millers Int'l Union AFL-CIO v. Kellogg Co.*, 904 F.3d 435, 444 (6th Cir. 2018) (cleaned up) (citation omitted).  And, because "we cannot say with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute, [we] must resolve any doubts in favor of arbitration." *Id.* In fact, far from expressly excluding the grievance, these three provisions—according to KLPI—resolve it. And so the grievance necessarily raises a dispute over the "interpretation or application of this [CBA]." In other words, the provisions on which KLPI relies go to the merits of the Union's grievance, not the threshold question of whether the contract requires the dispute to be resolved through arbitration.

KLPI believes that were we to apply any of these provisions to the Union's claim, we would see that KLPI never agreed to arbitrate such a baseless grievance. KLPI points to *United Steelworkers of Am., Loc. No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726 (6th Cir. 1972), where we interpreted the parties' CBA before we denied an order to arbitrate. *Id.* at 729. There, the union's grievance concerned the discharge of a supervisory employee. *Id.* Yet the parties' arbitration clause only covered disputes "between an employee and the Company," and the CBA defined "employee" to exclude "supervisors." *Id.* Because of this, we found "by its terms[,] [the CBA] does not impose upon the Company any duty to arbitrate a dispute concerning discharge of a supervisor." *Id.* But in that case, the CBA did not "permit the possible inference" that a supervisor was covered as an "employee," so we simply relied on the "express exclusion" of a supervisor's grievance from arbitration. *See id.* KLPI has not identified here a similar exclusion of the Union's grievance, and the CBA does not prevent the possible inference that the fulfillment center and the individuals working there are covered by the CBA.[2]

### ii.    Forceful Evidence

KLPI also contends that it has presented "forceful evidence of a purpose to exclude the claim from arbitration[.]" *AT & T Techs., Inc.*, 475 U.S. at 650 (citation omitted). It maintains

---

[2]KLPI also directs us to *Rite Aid of Pennsylvania, Inc. v. United Food & Com. Workers Union, Loc. 1776*, 595 F.3d 128 (3d Cir. 2010), where a union brought a similar grievance, and the Third Circuit refused to order arbitration because the claim did not "rais[e] a legitimate question of the CBA's interpretation." *Id.* at 132. In that case, Rite Aid had denied the union access to Rite Aid's newly acquired drugstores, where the union sought to solicit membership. *Id.* at 130. The parties' CBA prohibited "any grievance that does not involve the *interpretation of any provision of this Agreement*;" *id.,* so the union brought a "store-access" grievance under three provisions of the CBA. *Id.* The Third Circuit thoroughly interpreted each of those provisions before deciding that the "store-access grievance does not fall within the scope of the CBA's arbitration clause." *Id.* at 136. We do not think such a thorough interpretation was warranted in that case. Instead, for the reasons outlined thoroughly in the *Rite Aid* dissent, we think that the Third Circuit should have saved the thorough interpretation for an arbitrator, as the parties agreed there, and similarly agreed here. *See id.* at 137–51 (Ambro, J., dissenting).

discovery would have shown that the CBA does not apply to the Knoxville Local Fulfillment Center and resultantly that KLPI never agreed to arbitrate a grievance complaining that it did. So, KLPI argues, the district court wrongly granted the Union's motion before allowing discovery. We reject this argument as well.

KLPI's so-called "forceful evidence" primarily comes in the form of arguments by its attorneys. KLPI's attorneys spent several pages in the response below—and on appeal before us—arguing that the CBA does not apply to the Knoxville Fulfillment Center because a company called "Vitacost.com" employs all the warehouse employees there and that the "Supply Chain Division," which operates distribution warehouse for The Kroger Company, has an entirely distinct "labor structure" from KPLI's grocery stores. But KLPI did not include these "allegations" in its answer. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("[I]t is black-letter law that . . . a court evaluating a motion for judgment on the pleadings . . . must focus only on the allegations in the pleadings.").

Even were we to consider allegations outside the pleadings, the result would remain the same. The "forceful evidence" KLPI relies upon does not undermine the scope of the CBA's arbitration agreement—it goes to the merits of the Union's grievance. *See United Steelworkers of Am.*, 21 F.3d at 131 ("[W]here the agreement contains an arbitration clause, the court . . . should not deny an order to arbitrate 'unless it may be said with positive assurance that the *arbitration clause* is not susceptible of an interpretation that covers the asserted dispute.'" (citation omitted) (emphasis added). Regardless of whether The Kroger "Supply Chain Division," "Vitacost.com," or any other party is potentially implicated by an arbitrator's decision, the Union is not seeking to enforce the *arbitration agreement* against any of them. Our only inquiry is whether the Union's grievance falls within the scope of the arbitration agreement, and it clearly does.[3]

---

[3]Here, the dissent believes we failed to credit the answer's allegation that KLPI has no employment relationship with employees at the Knoxville Local Fulfillment Center. Not so. Although we ignored KLPI's arguments about *who* employs the warehouse employees, we accepted the allegation that *KLPI does not*—Rule 12(c) thus remains intact. Regardless, the thrust of the dissent's disagreement is the effect of this allegation on the question of arbitrability. The dissent reasons that if KLPI did not hire the warehouse employees then the warehouse could not be a "store" governed by the CBA. The dissent arrives at this conclusion by interpreting the word "store" in Article 3 § A of the CBA, finding warrant to do so in *Litton Financial Printing Division v. National Labor*

Because the Union's grievance falls within the scope of the CBA's arbitration agreement, we affirm the district court's decision to compel arbitration.

### B. Jurisdiction

KLPI lastly raises a jurisdictional argument. It argues any order enforcing the arbitration agreement invades the jurisdiction of the National Labor Relations Board. KLPI believes the Union's grievance arises solely under the National Labor Relations Act of 1935, and so the arbitrator lacks authority to resolve it. KLPI is wrong.

The National Labor Relations Board (the "Board") administers the National Labor Relations Act of 1935 (the "NLRA"). *See* 29 U.S.C. § 153. Section 7 of the NLRA "guarantees workers 'the right to self-organization[] [and] to form, join, or assist labor organizations." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (citing 29 U.S.C. § 157). When a Union brings a claim "arguably subject to [section] 7 . . . of the [NLRA]," we must yield to the Board's expertise and decline jurisdiction. *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236, 245 (1959). Nevertheless, Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA") grants federal courts "jurisdiction over contractual disputes between employers and unions." *DiPonio Const. Co. v. Int'l Union of Bricklayers*, 687 F.3d 744, 749 (6th Cir. 2012); *see also* 29 U.S.C. § 185(a)). And this includes the jurisdiction to

*Relations Board*, 501 U.S. 190 (1991) and extra-circuit caselaw purporting to value the duty to determine arbitrability higher than the duty to avoid deciding the merits when the issues are intertwined. And having determined that this CBA would not govern the warehouse, the dissent concludes the Union's grievance is not arbitrable—incidentally, deciding the merits of the Union's grievance en route. But even assuming *Litton* required us to define what a "store" is (or more specifically, isn't), *but see Litton*, 501 U.S. at 209 ("[W]e refuse to apply [the] presumption [of arbitrability] wholesale *in the context of an expired bargaining agreement*[.]" (emphasis added)), we need not abandon the presumption of arbitrability today: KLPI's allegation does not inescapably defeat this grievance, such that it no longer properly "concerns the interpretation or application of *this* [CBA]." *See United Steelworkers of Am. v. Am. Mfg. Co*., 363 U.S. 564, 567–68 (1960) ("The function of the court . . . is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract."). The Union's grievance in essence alleges that KLPI breached Article 3 § A of the CBA when The Kroger Company surreptitiously opened a warehouse through the "Supply Chain Division," instead of a grocery "store" through KLPI. Put another way, the grievance assumes Article 3 § A *required* KLPI to employ the warehouse employees. So unlike a grievance seeking to govern a Target in Nashville (thus, clearly having nothing to do with *this* CBA), the grievance still concerns the "interpretation or application of *this* [CBA]" because it alleges *this* CBA *required* the warehouse to be a "store"—even if the Union's grievance fails because KLPI's allegation proves the warehouse is not. While the dissent correctly implies that The Kroger Company—not KLPI—presumably is responsible for opening a warehouse instead of a grocery store, an arbitrator must still interpret *this* CBA to dispose of the Union's arguably "frivolous," yet arbitrable, grievance. *AT & T Techs., Inc.*, 475 U.S. at 649. So the merits are not intertwined because we need not determine whether the Knoxville Local Fulfillment Center is governed by the CBA to conclude the parties agreed to arbitrate that question.

"grant the union specific enforcement of an arbitration clause[.]"  *Int'l Bhd. of Elec. Workers, Loc. 71 v. Trafftech, Inc.*, 461 F.3d 690, 694 (6th Cir. 2006) (citation omitted).  So, as we've long recognized, federal courts and the Board "have concurrent jurisdiction over some disputes." *DiPonio Const. Co.*, 687 F.3d at 749.

KLPI believes we lack jurisdiction nonetheless because the Union's arbitration claim is "primarily representational."  Although we share jurisdiction with the Board in some instances, we do not enjoy concurrent jurisdiction with the Board over "primarily representational" claims. *Trafftech, Inc.*, 461 F.3d at 695 (citation omitted).  A claim is "primarily representational" in one of two circumstances:  (1) where the Board has already exercised jurisdiction over it and is either considering the matter or has already decided it, or (2) where the claim forces an "initial decision in the representation area."  *Id.* (cleaned up).  As the Board has never exercised jurisdiction over the Union's grievance, we must decide whether the arbitration claim forces a so-called "initial decision in the representation area."

A claim forces an "initial decision in the representation area" where the court or arbitrator *must* resolve a representational question under the NLRA to resolve the grievance.  *See DiPonio Const. Co.*, 687 F.3d at 750 (citing *Trafftech, Inc.*, 461 F.3d at 695).  For instance, KLPI argues, to resolve the Union's grievance, the arbitrator *must* decide whether, under the NLRA, the Union represents employees at the warehouse.  Specifically, KLPI believes an arbitrator must determine whether, under the NLRA, employees at KLPI's grocery stores "constitute a single appropriate bargaining unit" with employees at the Knoxville Local Fulfillment Center.

For its part, the Union characterizes its grievance as a breach-of-contract claim under section 301(a) of the LMRA.  The Union contends its grievance only raises "contractual" issues, *i.e.*, whether, by its terms, the CBA applies to employees at the Knoxville Local Fulfillment Center.  If the Union is correct, we may retain jurisdiction.  While it won't suffice to "simply refer[] to the claim as a 'breach of contract,'" we retain concurrent jurisdiction over claims that raise matters "primarily of contract interpretation," even if they "*potentially* implicat[e] representational issues."  *Air Prods. & Chems., Inc.*, 300 F.3d at 672, 675 (emphasis added). Such circumstances can arise where the employer's conduct constitutes an unfair labor practice *and* a breach of the CBA.  *DiPonio Const. Co.*, 687 F.3d at 749 (citation omitted).  In such a

circumstance, our concurrent jurisdiction provides "an independent forum for resolution of representational or contractual issues[.]" *Air Prods. & Chems., Inc.*, 300 F.3d at 673.

So is the Union's claim "primarily representational" or contractual? As evidence that it is contractual, the Union likens its grievance to the one in *Air Products & Chemicals, Inc*, where we exercised jurisdiction and ordered arbitration. 300 F.3d at 669. There, the Union submitted a grievance to exercise the employees' "seniority rights" to work at a newly opened facility. The employer dismissed the grievance, and the Union moved to compel arbitration. *Id.* at 669–70. We characterized the arbitration claim as a contractual claim because the Union sought to arbitrate a grievance grounded in the CBA; the union had relied on the CBA's provision granting "seniority rights" to certain employees who worked at older facilities. *Id.* at 675–76. Unlike the situation here, however, the parties in *Air Products & Chemicals, Inc.* never disputed whether the union *represented* those employees; they only disputed whether the CBA governed them at a new facility. *Id.* at 674. But the parties here dispute not only whether the CBA applies to the Knoxville Local Fulfillment Center but also whether the Union *represents* employees at the warehouse.

Nonetheless, this arbitration claim is contractual because the Union's grievance arises under the CBA—particularly under, what's commonly called, a "new-store" clause. A "new-store" clause provides for "employer recognition of a union as bargaining agent for its employees in the 'employer's present and future retail food store situated within the area.'" *Emp. Coordinator Labor Relations*, § 47:26. Although it does not characterize its grievance in this way, the Union clearly anchors its right to represent the warehouse employees in a "new-store" clause. The Union relies on the provision in the CBA establishing it as the representative for employees at "*the stores* of the Kroger Company, Nashville Division." The Union argues this language applies to both present and future "stores" and that the Knoxville Local Fulfillment Center is such a "store." Properly construed we have jurisdiction over the Union's arbitration claim because the grievance presents the arbitrator with a matter "primarily of contract interpretation," *i.e.*, whether the CBA includes a "new-store" provision, which KLPI somehow breached. *Air Prods. & Chems., Inc.*, 300 F.3d at 672.

Compare the Union's claim with the one in *DHSC, LLC v. California Nurses Ass'n*, 700 F. App'x 466 (6th Cir. 2017), where enforcing an arbitration agreement would have forced a representational issue. In that case, the union and the employer could not agree on the terms of a CBA; so the union petitioned the Board to hold an election for the employees' representation. *Id.* at 467–78. The employer objected because it claimed the parties agreed exclusively to arbitrate election disputes—as opposed to seeking resolution from the Board. *Id.* at 469. The Board rejected that objection and, after an election, certified the union as the employees' representative. *Id.* at 469–71. Although the employer characterized its subsequent federal arbitration claim as a breach-of-contract claim, we recognized the claim was "primarily representational": for us to have decided whether the parties had an agreement exclusively to arbitrate election disputes, we would have implicitly decided whether the Board had the authority to certify the Union—clearly a representational issue. *See id*. at 473. But unlike the employer in *California Nurses Ass'n*, KLPI acknowledges that the CBA obligates it to arbitrate the Union's grievances (it just argues not this one). So simply by enforcing *this* arbitration agreement, we will not be determining who the Union represents, including whether it represents the warehouse employees.

Nor does the arbitrator face those concerns presented in *International Brotherhood of Boilermakers v. Olympic Plating Indus., Inc.*, 870 F.2d 1085 (6th Cir. 1989). There, union members voted to disaffiliate with their union, and the employer entered a CBA with a different one. So the original union sued for an injunction to prevent the employer from recognizing the new union. *Id.* at 1087. We determined the claim was "primarily representational" because it required the court to "determine which of the two unions would be the authorized exclusive collective bargaining representative[.]" *Id.* But unlike the court in *Olympic Plating Industries, Inc.*, the arbitrator here need not determine whether, under the NLRA, the Union's bargaining unit includes employees at the Knoxville Local Fulfillment Center; if the Union is correct, the parties have already answered "yes" to that question through the "new-store" clause. *See Cappa v. Wiseman*, 659 F.2d 957, 960 (9th Cir. 1981) ("[P]arties to a collective bargaining arrangement may by agreement define the scope of the bargaining unit."); *see also Hotel Emps., Rest. Emps. Union, Loc. 2 v. Marriott Corp.*, 961 F.2d 1464, 1468 (9th Cir. 1992) ("[W]hile the courts may not resolve representational issues, the parties may resolve these issues contractually.").

When all's said and done, a "new-store" clause is simply "interpreted to mean that the employer waives its right to a Board ordered election." *Retail Clerks Int'l Ass'n Local No. 455 v. NLRB*, 510 F.2d 802, 806 (D.C. Cir. 1975). So while the employer must "accept alternative methods" of proving employee support for the union, the "new-store" employees must still elect the Union. *NLRB. v. Retail Clerks Loc. 588, Retail Clerks Int'l Ass'n*, 587 F.2d 984, 986 n.2 (9th Cir. 1978). For instance, the Union's grievance complained that KLPI "should have contacted the Union prior to opening" the Knoxville Local Fulfillment Center and that KLPI should have "introduced [the employees] to a Representative of the Union." So the Union's grievance is premised on the notion that the Knoxville Local Fulfillment Center is a "new store," and thus the Union had a contractual right to establish majority support at the warehouse. And although KLPI agrees the Union "immediately represents bargaining unit employees" whenever KLPI opens a "new store," the Union alleges that KLPI failed to abide by this prior course of dealing here. *Cf. Rite Aid of Pennsylvania, Inc.*, 595 F.3d at 144–47 (Ambro, J., dissenting) ("[T]he Union seeks the opportunity through arbitration to demonstrate, based on the parties' past practices and/or custom, that they understood the [CBA] to grant the Union the right to enter newly acquired stores [to] solicit[] membership.").

If during arbitration a question remains about whether the warehouse employees wish to be represented by the Union, "[t]he superior authority of the Board may be invoked at any time." *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 272 (1964). The Board does not lose its jurisdiction over this dispute "solely because we enforce the arbitration clause[.]" *Trafftech, Inc.*, 461 F.3d at 697 (citation omitted). So, at this point, any conflict between the arbitrator's decision and the Board's jurisdiction is speculative. *Cf. United Food & Com. Workers Union, Loc. 400 v. Shoppers Food Warehouse Corp.*, 35 F.3d 958, 962 (4th Cir. 1994) (rejecting argument that "the arbitration clause should not be enforced because the arbitrator's decision may conflict with . . . NLRB policy requiring a showing of majority status before [new][-]store clauses are enforced."). We affirm the district court's conclusion that this claim is not preempted by the NLRB.

**CONCLUSION**

We **AFFIRM** the district court's order granting the Union's motion for judgment on the pleadings and compelling KLPI to arbitrate the Union's grievance.

—————————

**DISSENT**

—————————

LARSEN, Circuit Judge, dissenting.  The majority concludes that KLPI must arbitrate a dispute over employees whom KLPI says it does not employ, in a warehouse that KLPI says it does not control.  Given the procedural posture, we must assume KLPI's claims are true.  When we do, the Union's motion for judgment on the pleadings must fail.  And the presumption of arbitrability cannot save it.  Although I agree with the majority that we have jurisdiction to hear this case, I would reverse the district court's order granting the Union's motion for judgment on the pleadings.  I respectfully dissent.

## I.

The nature of the grievance here is undisputed: the Union objects to KLPI's refusal to bind employees of the Knoxville Local Fulfillment Center to the Nashville Division's CBA. May the Union compel KLPI to arbitrate that grievance through an arbitration agreement contained in the parties' CBA?  KLPI says, "no."  The CBA extends only to "employees" of KLPI employed "in the stores" of KLPI.  KLPI says that it "has no relationship with employees at the" Fulfillment Center.  If this factual claim is true, then surely KLPI can neither "bind" nor "refuse to bind" the Fulfillment Center employees to the CBA.  Nor can that unrelated store be a "store covered by the CBA," at least insofar as the CBA governs relations between KLPI and the Union.[1]

The procedural posture requires us to take KLPI's version of the facts as true.  The Union sought to compel arbitration by seeking judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  Plaintiffs rarely use the Rule 12(c) procedure, so few cases discuss the standards for reviewing such a motion.  But one thing is clear: any factual allegation denied by

---

[1]The district court took as true the Kroger Company's denial that it was also party to the CBA, so it denied the Rule 12(c) motion as it related to the parent company, allowing the case to proceed to discovery on that fact question.  If Kroger Company is a party to the CBA, and if the employees at the Fulfillment Center have some relationship with Kroger Company, then it is possible that Kroger Company should be made to arbitrate the grievance.  But, at the request of the Union, Kroger Company has been dismissed without prejudice.

the answer must be taken as false when assessing a plaintiff's Rule 12(c) motion.  *See Dist. No. 1., Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019); *Beal v. Mo. Pac. R.R. Corp.*, 312 U.S. 45, 51 (1941); *see also* 61A Am. Jur. 2d *Pleading* § 497 (2022) ("Allegations of a complaint that are specifically denied by the answer must be eliminated from consideration in determining a plaintiff's motion for judgment on the pleadings."); 61A Am. Jur. 2d *Pleading* § 505 (2022) ("[A]ll allegations of the moving party which have been denied or controverted are taken as false.").

Against that backdrop, this case is straightforward.  KLPI denied any relationship with the employees of the Fulfillment Center in the pleadings.  KLPI told the Union that it did not "employ, hire, train, direct, supervise, or have any employment relationship with the individuals employed" at the Fulfillment Center.  And, in response to the complaint's claim that "[e]mployees at the [Fulfillment Center] are employed by [Kroger and KLPI]," KLPI admitted that Kroger's supply chain division employs those persons, but "otherwise denied" the claim. Taking KLPI's statements in the pleadings as true, KLPI has no employment relationship whatsoever with the employees of the Fulfillment Center.  And we must strip the contrary facts from the Union's complaint when reviewing its Rule 12(c) motion.

On those facts, the parties' CBA and its accompanying arbitration provision do not govern.  The arbitration provision covers any "interpretation or application of the contents of [the CBA]," so anything even plausibly within the four corners of the CBA is arbitrable.  *Compare Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 470 (6th Cir. 2009), *with United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 410 (5th Cir. 1990).  But the CBA extends only to "employees" of KLPI employed "in the stores" of KLPI. The CBA does not cover the employees of the totally unrelated Fulfillment Center any more than it would cover the employees of a newly built Target in Nashville or a Kroger in Hawaii.  The Union therefore cannot force KLPI to arbitrate union representation at the Fulfillment Center.

The majority opinion sidesteps the effect of KLPI's denials by suggesting that KLPI should have included "allegations" about the true employer of the Fulfillment Center, vitacost.com, in the answer.  Maj. Op. at 8.  But denials alone (without further elaboration) are sufficient to controvert facts of the complaint for a Rule 12(c) motion.  *See Liberty Mar. Corp.*,

933 F.3d at 761–63 (reversing the district court's order granting the plaintiff's Rule 12(c) motion to compel arbitration because the court failed to consider the defendant's denials in the answer when determining whether an agreement to arbitrate existed); *see also* 61A Am. Jur. 2d *Pleading* §§ 497, 505. And even if allegations were required, the majority opinion acknowledges that, in a letter attached to the Union's amended complaint, KLPI explained that it had no relationship with the employees at the Fulfillment Center. Maj. Op. at 3. So in ruling on the Union's Rule 12(c) motion, we must take as *false* the Union's assertion that the Fulfillment Center workers are KLPI "employees" working in a KLPI "store." Judgment on the pleadings for the Union was, therefore, improper.

The presumption of arbitrability does not change this result. As the district court noted, the interplay between the Rule 12(c) standards and the presumption is complicated. Here, the Rule 12(c) standards favor KLPI. *See Liberty Mar. Corp.*, 933 F.3d at 760. The presumption favors the Union. *See United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 279–80 (6th Cir. 2007) (noting that the presumption is "particularly applicable" to "broad" arbitration provisions, like the one here). But the Rule 12(c) standard does not give way to the presumption of arbitrability. Instead, the presumption goes to work once we apply the agreement to the facts. *See Liberty Mar. Corp.*, 933 F.3d at 763 (recognizing that the presumption of arbitrability comes into play after it is determined that the parties had a contract to arbitrate). Construing all the facts (including the denials in the answer) in the nonmovant's favor, we ask whether "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1980) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). When the facts are properly construed in KLPI's favor for the purposes of the Union's Rule 12(c) motion, the dispute here involves employees and a facility wholly unrelated to KLPI. At this stage, then, the dispute is outside of the CBA.

## II.

The majority opinion's approach also reveals a disagreement over a broader question: what to do when two principles governing arbitration intersect and conflict. Generally, four principles govern arbitration provisions in collective bargaining agreements. But

the principles are also confusing and sometimes competing.  *See Commc'n Workers of Am. v. Avaya*, *Inc.*, 693 F.3d 1295, 1300 (10th Cir. 2012).

First, arbitration is a matter of contract.  *AT&T Techs.*, 475 U.S. at 648.  A party cannot be required to submit to an arbitration it did not agree to.  *Id.*  Second, arbitrability is a question for courts to decide unless the parties "clearly and unmistakably" provide otherwise.  *Id.* at 649. Third, in deciding arbitrability, a court should not rule on the potential merits of the underlying claims.  *Id.*  Even "frivolous" claims should be sent to the arbitrator.  *Id.* at 650.  Fourth, where there is an arbitration clause, there is a presumption of arbitrability.  *Id.*  Arbitration is appropriate unless it can "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" and "[d]oubts should be resolved in favor of coverage."  *Id.* (quoting *Warrior & Gulf Navigation*, 363 U.S. at 582–83).  The presumption is especially strong when the arbitration clause is broad.  *Id.*  Then only the "most forceful evidence" of a purpose to exclude the claim from arbitration will prevail.  *Id.* (quoting *Warrior & Gulf*, 363 U.S. at 584–85).  And when the provision is so broad that it covers all questions of contract interpretation, the court's role "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract."  *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960).

The problem arises when these principles collide.  In this case, the "merits and its arbitrability are inextricably intertwined."  *Rite Aid of Pa.*, *Inc. v. United Food & Com. Workers Union, Loc. 1776*, 595 F.3d 128, 131 (3rd Cir. 2010).  If the Fulfillment Center has KLPI employees, then this dispute is clearly arbitrable.  And the Union likely wins on the merits, too. If the Fulfillment Center has no relation to KLPI, this dispute is not arbitrable, and the Union loses on the merits.  So we end up stuck between the first principle, which tells us to interpret the scope of the agreement to determine arbitrability, and the third principle, which tells us not to resolve the merits.  *AT&T Techs.*, 475 U.S. at 649; *see also Avaya*, 693 F.3d at 1300 (discussing the clashing principles and compiling cases).

Thankfully, the Supreme Court has told us what to do.  In *Litton Financial Printing Division v. National Labor Relations Board*, the Court directed us to interpret the underlying agreement when necessary to fulfill our duty to decide questions of arbitrability, even when that

also means deciding the merits.  501 U.S. 190 (1991).  The question in *Litton* was "whether a dispute over layoffs which occurred well after expiration of a collective-bargaining agreement must be said to arise under the agreement despite its expiration." *Id.* at 193.  The Union and the dissenters argued that the merits of that question were not for the court because "that is an issue of contract interpretation to be submitted to an arbitrator in the first instance." *Id.* at 208.  The Supreme Court disagreed.  The Court emphasized that "[w]hether or not a [party] is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'" *Id.* (quoting *AT&T Techs.*, 475 U.S. at 651).  The Court also acknowledged the presumption of arbitrability, especially when, as in that case, "the agreement contains a broad arbitration clause." *Id.* at 209.  But it nonetheless decided the merits: "Although doubts should be resolved in favor of coverage, we must determine whether the parties agreed to arbitrate this dispute, *and we cannot avoid that duty because it requires us to interpret a provision of a bargaining agreement.*" *Id.*  (emphasis added) (citation omitted).

*Litton* tells us how to resolve conflicts between our duties to resolve arbitrability questions and to abstain from the merits:  interpret the agreement when necessary to determine its scope, even if doing so incidentally decides the merits; otherwise, send the merits to an arbitrator.  That means that *some* but not *all* frivolous claims will go to the arbitrator.

The majority opinion discounts *Litton*, mentioning it only in a footnote and suggesting that it applies only to cases involving expired bargaining agreements. *See* Maj. Op. at 8 n.3.  But the majority offers no theory explaining why *Litton* should be limited to its facts; and no other circuit has read *Litton* that way.  Instead, a wealth of caselaw supports the conclusion that *Litton* requires courts to interpret an agreement when necessary to determine its scope, even if doing so incidentally decides the merits.

In *International Brotherhood of Electrical Workers v. GKN Aerospace North America, Inc.* (*IBEW*), a union sought to compel arbitration of a dispute involving one of the GKN's supervisory employees.  431 F.3d 624, 626 (8th Cir. 2005) (Colloton, J.).  The supervisor had been promoted, had obtained a withdrawal card from the union, and had ceased to be a member of any bargaining unit, years before the current CBA was signed. *Id.* at 626, 629.  But he no

longer wanted to work as a supervisor and sought to return to his work as an electrician. *Id.* at 626. Having no open electrician positions, GKN fired the supervisor. *Id.* The union filed a grievance on the supervisor's behalf, trying to return him to the bargaining unit, and seeking arbitration. *Id.* The court recognized the presumption in favor of arbitration, but also recognized a "tension" in the caselaw when "the merits of the claim are intertwined with the question of arbitrability." *Id.* at 627. *Litton,* the court held, resolved the tension. After *Litton*, the "judicial responsibility to determine arbitrability takes precedence over the general rule to avoid consideration of the merits of a grievance." *Id.* at 628. So the question for the court was whether it was "'possible' for an arbitrator to decide in favor of the supervisor 'without thereby, in effect, amending the plain language of the agreement.'" *Id.* (citing *Peerless Pressed Metal Corp. v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO*, 451 F.2d 19, 20 (1st Cir. 1971)); *see also Gen. Tel. Co. v. Commc'n Workers of Am.*, 402 F.2d 255, 256 (9th Cir. 1968) (per curiam) (holding that employer was not required to arbitrate where "[t]o hold otherwise, would be to rewrite the contract between the parties"). The answer was "no." No arbitrator could rule for the plaintiff because he was "clearly . . . not an employee, covered by the agreement." *IBEW*, 431 F.3d at 629. So the dispute did not "arise under the Agreement" and was "not subject to arbitration." *Id.* at 630.

The Tenth Circuit followed suit in *Communication Workers of America v. Avaya, Inc.* There, the issue was whether "backbone engineers" were employees or managers, the latter being excluded from the CBA. 693 F.3d at 1296–97. Just as here, the arbitration provision extended to any "complaint involving the interpretation *or application* of any of the provisions of [the CBA]." *Id.* at 1297 (emphasis added) (alteration in original). Nonetheless, the court decided that *Litton* required it to "evaluate the threshold question of whether the parties consented to submit a particular dispute to arbitration," even if the threshold question decided the merits. *Id.* at 1300–01. "[T]he Supreme Court tells us, the court's duty to determine whether the party intended the dispute to be arbitrable trumps its duty to avoid reaching the merits." *Id.* at 1300. Looking at the agreement, the court concluded that "management" clearly meant any employee "designate[d] as [a] manager[]." *Id.* at 1301. So there was "no real dispute about the classification of backbone engineers" and there was only "one conclusion to draw from the record: the parties did not consent to submit the underlying dispute to arbitration." *Id.* at 1302.

The Seventh Circuit also agrees. After *Litton,* "the rule that courts must decide arbitrators' jurisdiction takes precedence over the rule that courts are not to decide the merits of the underlying dispute." *Indep. Lift Truck Builders Union v. Hyster Co.*, 2 F.3d 233, 236 (7th Cir. 1993). So "[i]f the court must, to decide the arbitrability issue, rule on the merits, so be it." *Id.* at 236.

The Third Circuit's decision in *Rite Aid of Pennsylvania, Inc. v. United Food & Commercial Workers Union, Local 1776* is so factually similar to this case that it is hard to distinguish. 595 F.3d 128. And it too, reached a result contrary to the majority's. There, Rite Aid had a CBA that covered certain drugstores in eastern Pennsylvania. *Id.* at 130. When Rite Aid acquired a chain of new stores, the Union sought arbitration, arguing that the CBA applied to "newly-acquired or newly-opened stores" within the CBA's geographic jurisdiction and that resolving the dispute required interpreting the CBA. *Id.* The court noted the broad arbitration provision and the presumption in favor of arbitration, but nonetheless recognized a duty to see if there was "forceful evidence" suggesting that the parties intended to exclude the dispute from arbitration. *Id.* at 131–32. And, looking at the terms of the agreement, the court concluded that "a right of Union access to newly acquired stores simply cannot be plausibly derived from the [CBA]." *Id.* at 134. Thus, the CBA could not apply to the new stores' "employees because the Union does not presently represent those stores' employees." *Id.* The court concluded that the plaintiff's interpretation was not "sufficiently plausible" to send the dispute to arbitration. *Id.* The majority disagrees with *Rite Aid*, finding the dissent's reasoning more persuasive. But in so doing, the majority opinion has put our circuit at odds with four others, and in the company of none.

The majority opinion is also at odds with our own pre-*Litton* caselaw. In *United Steelworkers of America, Local No. 1617 v. General Fireproofing Co.*, the court was presented with an arbitration provision that, as in the present case, covered disputes over the "meaning and *application*" of the CBA. 464 F.2d 726, 729 (6th Cir. 1972) (emphasis added). Nevertheless, we declined to send the Union's grievance on behalf of a supervisor to the arbitrator because the CBA did not "permit the possible inference" that he was covered as an "employee." *Id.* at 730. We said that we could "not understand how an arbitrator could arbitrate a grievance of an

employee who is not a member of the bargaining unit." *Id.* The majority opinion distinguishes *General Fireproofing* on the ground that the arbitration clause there covered only disputes "between an employee and the Company." Maj. Op. at 7. Because of this "express exclusion" of the grievance from arbitration, *see id.*, the majority opinion concludes that the panel in *General Fireproofing* resolved the question of arbitrability without deciding the merits. According to the majority opinion, the CBA in the present case contains no similar exclusion. But it does. The "Dispute Procedure" section submits to arbitration only disputes between the KLPI and the "aggrieved employee." And the scope of the CBA extends only to KLPI employees in KLPI stores. So in my opinion, *General Fireproofing* controls; but even if not, *Litton* does.

*  *  *

"Whether or not a [party] is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'" *Litton*, 501 U.S. at 208 (quoting *AT&T Techs.*, 475 U.S. at 651). Here, the parties' dispute falls outside the scope of the arbitration agreement. It is true that the arbitration provision is so broad that we are "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers*, 363 U.S. at 568. But on the face of the contract, this CBA applies only to KLPI "employees" at KLPI stores. So, if KLPI's answer is believed, an arbitrator could not rule for the Union without "amending the plain language of the agreement" by expanding the CBA's scope. *See Peerless Pressed Metal*, 451 F.2d at 20. And KLPI never agreed to arbitrate this dispute. *See AT&T Techs.*, 475 U.S. at 648.

I would reverse the district court's grant of the Union's Rule 12(c) motion and remand for further proceedings. I respectfully dissent.